**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 11-10182 |
| v. | D.C. No. 3:10-cr-00455-WHA-1 |
| MARCEL DARON KING, *Defendant-Appellant*. | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted
September 19, 2012—San Francisco, California

Filed March 8, 2013
Amended August 27, 2013

Before:  Susan P. Graber, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Order;
Opinion by Judge Graber;
Dissent by Judge Berzon

**SUMMARY**[*]

**Criminal Law**

The panel amended a March 8, 2013, opinion affirming a conviction, and the court denied a petition for rehearing en banc, in a case involving whether the Fourth Amendment permits a suspicionless search of a probationer's residence.

In the amended opinion, the panel held that a suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment.

Dissenting, Judge Berzon wrote that the majority does not give appropriate weight to the particular language in the defendant's search condition and to the Supreme Court's holdings that probationers have greater expectations of privacy than parolees.

**COUNSEL**

Daniel P. Blank, Assistant Federal Public Defender, San Francisco, California, for Defendant-Appellant.

Suzanne B. Miles, Assistant United States Attorney, San Francisco, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

The opinion filed March 8, 2013, and published at 711 F.3d 986, is amended by the opinion filed concurrently with this order.

With these amendments, Judges Graber and Tallman have voted to deny Appellant's petition for rehearing en banc, and Judge Berzon has voted to grant it.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

Appellant's petition for rehearing en banc is **DENIED**. No further petitions for rehearing or for rehearing en banc shall be entertained.

## OPINION

GRABER, Circuit Judge:

Defendant Marcel Daron King appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The question that we must answer is whether the Fourth Amendment permits a suspicionless search[1] of a probationer's residence. We hold that such a

---

[1] We use the term "suspicionless search" to refer to a search for which the police have less than reasonable suspicion. That is, the term covers both a search as to which there is some (but not enough) suspicion and a

search is permissible when, as here, a violent felon has accepted a suspicionless-search condition as part of a probation agreement. We therefore affirm.

Officers of the San Francisco Police Department suspected that Defendant was involved in a homicide.[2] When they checked into his criminal history, they learned that he was on adult felony probation in the City and County of San Francisco for violation of California Penal Code section 273.5, which prohibits the willful infliction of corporal injury on a cohabitant. Defendant's probation agreement included the following term: "Defendant is subject to a warrantless search condition, as to defendant's person, property, premises and vehicle, any time of the day or night, with or without probable cause, by any peace, parole or probation officer."[3]

---

search that is, for example, conducted randomly with no individualized suspicion.

[2] We recite only the facts that relate to the present question. The original panel opinion, *United States v. King*, 672 F.3d 1133 (9th Cir.) (per curiam), *vacated*, 687 F.3d 1189 (9th Cir. 2012) (en banc) (per curiam), contains a full statement of the facts.

[3] Under California law, Defendant's agreement to the warrantless search condition as part of his state-court probation was an agreement to be subject to suspicionless searches. *See People v. Bravo*, 738 P.2d 336, 342–43 (Cal. 1987) (holding that "a search condition of probation that permits a search without a warrant also permits a search without 'reasonable cause'"); *see also People v. Woods*, 981 P.2d 1019, 1023–24 (Cal. 1999) (approving *Bravo*'s holding).

We disagree with the dissent's assertion that *Bravo* represents *only* a decision under federal constitutional standards. Dissent at 18–19, n.6. The court there interpreted "the scope of appellant's consent in agreeing to the search condition of his probation" under California law. *Bravo*, 738 P.2d at 342. The *meaning* of such a California term of probation is a

The officers searched Defendant's residence and found an unloaded shotgun under his bed. That shotgun was the subject of Defendant's indictment under 18 U.S.C. § 922(g)(1).

In the district court, Defendant filed a motion to suppress the shotgun, arguing that it was the fruit of an illegal search. The court denied the motion, holding that the officers had reasonable suspicion to conduct the search. After a bench trial with stipulated testimony, conducted only to preserve Defendant's right to appeal the denial of his motion to suppress, Defendant was convicted.

On appeal, a majority of this panel concluded that police lacked reasonable suspicion that Defendant was engaged in criminal activity. *United States v. King*, 672 F.3d 1133, 1139 (9th Cir.) (per curiam), *vacated*, 687 F.3d 1189 (9th Cir. 2012) (en banc) (per curiam). Nevertheless the majority also held that the district court properly denied Defendant's motion to suppress because, under *United States v. Baker*, 658 F.3d 1050, 1055–56 (9th Cir. 2011), suspicionless-search

---

question of state law. *Cf. Parrish v. Wainright*, 614 F.2d 1028, 1029 (5th Cir. 1980) (per curiam) (holding that the meaning of a parole condition is a matter of state law). *Woods* cited *Bravo*'s holding with approval and looked to California law to examine the imposition on probationers of search clauses. *Woods*, 981 P.2d at 1023–24, 1025 n.5. The *Woods* court also observed, referring to California law, that "the search in any case remains limited in scope to the terms articulated in the search clause." *Id.* at 1027–28 (citing *Bravo*, 738 P.2d at 336). Only after the meaning and scope of a search clause are determined, under state law, does the federal Fourth Amendment analysis begin. Thus, although the dissent plausibly parses King's search clause, California law at the time this search condition was imposed on King interpreted such clauses more broadly, to waive all claims of privacy. We are not at liberty to do otherwise.

conditions for probationers do not violate the Fourth
Amendment.

*Baker*, however, rested on the faulty premise that there is
no difference, for Fourth Amendment purposes, between
probationers and parolees. *Id.* at 1058–60 (Graber, J.,
concurring). That premise was at odds with the Supreme
Court's statement in *Samson v. California*, 547 U.S. 843, 850
(2006), that "parolees have fewer expectations of privacy
than probationers, because parole is more akin to
imprisonment than probation is to imprisonment."

The en banc court granted rehearing to consider the
continuing validity, in light of *Samson*, of *Baker* and several
related cases. *United States v. King*, 682 F.3d 779 (9th Cir.
2012) (order). In a brief opinion, the court overruled *Baker*
and the related cases, vacated our panel opinion, and
remanded the case to us. *United States v. King*, 687 F.3d
1189 (9th Cir. 2012) (en banc) (per curiam).

Now that *Baker* no longer controls, and because the panel
majority has already held that police lacked reasonable
suspicion that Defendant was involved in criminal activity,
we must decide whether the search of Defendant's residence
satisfied the Fourth Amendment even though police lacked
reasonable suspicion. Thus, the question presented is whether
a suspicionless search, conducted pursuant to a condition of
Defendant's probation, violates the Fourth Amendment.

In *United States v. Knights*, 534 U.S. 112, 114 (2001), the
Supreme Court upheld a search that police had conducted
pursuant to the terms of a defendant's probation, which
authorized searches "with or without a search warrant,
warrant of arrest or reasonable cause." The police had no

warrant for the search of the defendant's apartment, but they did have reasonable suspicion that the defendant was involved in criminal activity. *Id.* at 114–15. The Court balanced the degree of intrusion on the defendant's expectation of privacy against the degree to which the government needed to conduct the search for the promotion of legitimate governmental interests. *Id.* at 118–19. The Court held that "the search . . . was reasonable under our general Fourth Amendment approach of examining the totality of the circumstances, with the probation search condition being a salient circumstance." *Id.* at 118 (citation and internal quotation marks omitted). The Court did not decide the question that we confront here: "whether the probation condition so diminished, or completely eliminated, [the defendant's] reasonable expectation of privacy . . . that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Id.* at 120 n.6.

In *Samson*, 547 U.S. at 846, the Supreme Court considered whether a California law that authorizes searches of parolees "with or without a search warrant and with or without cause" violates the Constitution. The Court used the same balancing approach that it had used in *Knights*. *Samson*, 547 U.S. at 848–54. In assessing the defendant's privacy interest, the Court wrote that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850. Balancing the defendant's privacy interests against the government's interests, the Court "conclude[d] that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 857.

In light of *Knights* and *Samson*, our task is to examine the totality of the circumstances to determine whether the suspicionless search of Defendant's residence was reasonable. *Id.* at 848. To do so, we must "'assess[], on the one hand, the degree to which [the search] intrudes upon [Defendant's] privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* (quoting *Knights*, 534 U.S. at 119).

Defendant's status as a probationer means that he begins with a lower expectation of privacy than is enjoyed by a citizen who is not subject to a criminal sanction. *Knights*, 534 U.S. at 119. "Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. . . . Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* (internal quotation marks omitted).

Additionally, "the probation search condition [is] a salient circumstance." *Id.* at 118. As in *Knights*, the judge who sentenced Defendant to probation "determined that it was necessary to condition the probation on [his] acceptance of the search provision." *Id.* at 119. "The probation order clearly expressed the search condition[,] . . . [Defendant] was unambiguously informed of it," and he accepted it. *Id.* Both *Samson* and *Knights* "found that acceptance of a clear and unambiguous search condition 'significantly diminished [a defendant's] reasonable expectation of privacy.'" *Samson*, 547 U.S. at 852 (quoting *Knights*, 534 U.S. at 120).

Under *Knights*, not only did Defendant begin with a lower expectation of privacy than an average citizen has, but the probation search condition "significantly diminished" that

lower expectation of privacy. We recognize that, under *Samson*, Defendant has a greater expectation of privacy than does a parolee. *Id.* at 850. So we do not go so far as to hold, as the *Samson* Court did, that Defendant "did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852. But we do conclude that Defendant's expectation of privacy was small, in light of the serious and intimate nature of his underlying conviction for the willful infliction of corporal injury on a cohabitant. We hold, therefore, that the search conducted here intruded on Defendant's legitimate expectation of privacy only slightly.

On the other side of the balance, the government has several important interests. First, the state has an interest in "apprehending violators of the criminal law, thereby protecting potential victims" from probationers' recidivism. *Knights*, 534 U.S. at 121. "'[T]he very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.'" *Id.* at 120 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 880 (1987)). In fact, "[t]he recidivism rate of probationers is significantly higher than the general crime rate." *Id.*

Second, the state has an interest in discovering criminal activity and preventing the destruction of evidence. The Supreme Court has recognized that

> probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial

rights of a jury and proof beyond a reasonable
doubt, among other things, do not apply.

*Id.* All the more so when, as here, the probationer agreed to
a search condition that permits warrantless, suspicionless
searches of the probationer's "person, property, premises and
vehicle[] [at] any time of the day or night."

Finally, the state has an interest in a probationer's
successful completion of probation and in his or her
reintegration into society. *Id.* at 120–21. The Supreme Court
has observed that, by reducing recidivism, a state's "ability to
conduct suspicionless searches of parolees . . . aids, rather
than hinders, the reintegration of parolees into productive
society." *Samson*, 547 U.S. at 854. That statement is true of
probationers as well.

We conclude that the governmental interests at stake here
"are substantial." *Id.* at 853. We further conclude that the
state has a significant need to promote those interests through
suspicionless searches of probationers. As the Supreme
Court has stated, the Fourth Amendment does not "require the
State to shut its eyes" to its legitimate interests. *Knights*,
534 U.S. at 121. Nor does it "render the States powerless to
address these concerns *effectively*." *Samson*, 547 U.S. at 854.

Balancing the slight intrusion on Defendant's expectation
of privacy against the government's significant need to
promote its legitimate governmental interests, we hold that
the search conducted here was reasonable. We need not
decide whether the Fourth Amendment permits suspicionless
searches of probationers who have *not* accepted a
suspicionless-search condition, or of lower level offenders
who have accepted a suspicionless-search condition, because

those cases are not before us. Nor do we condone searches that are conducted for illegitimate reasons, such as harassment. We hold only that a suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment.

**AFFIRMED.**

BERZON, Circuit Judge, dissenting:

I continue to agree with Judge Graber that San Francisco Police Department officers lacked reasonable suspicion to search Marcel King at his residence. *See* Op. at 5; *United States v. King*, 672 F.3d 1133, 1139 (9th Cir. 2012) (per curiam), *vacated*, 687 F.3d 1189 (9th Cir. 2012) (en banc) (per curiam). I part ways with the present majority regarding whether police could search King's home without any individualized suspicion. The majority does not give appropriate weight to two factors that are for me decisive — the particular language in King's search condition and the Supreme Court's holdings that probationers have greater expectations of privacy than parolees. I therefore respectfully dissent.

I

Like the majority, I "examine the totality of the circumstances to determine whether the suspicionless search of [King's] residence was reasonable." Op. at 8. I begin by analyzing King's privacy interests under the Fourth Amendment, and then turn to the weighing of those interests

against competing, governmental concerns.  *See Samson v. California*, 547 U.S. 843, 848 (2006); *United States v. Knights*, 534 U.S. 112, 118–19 (2001).

## A

In assessing "'the degree to which [the search] intrude[d] upon [King's] privacy,'" *Samson*, 547 U.S. at 848 (quoting *Knights*, 534 U.S. at 119), a critical fact that distinguishes this case from *Knights* and *Samson* is the text of the probation search condition applicable to King.  The condition in *Knights* authorized searches "with or without a search warrant, warrant of arrest or reasonable cause."  *Knights*, 534 U.S. at 114.  The parole condition in *Samson*, in turn, provided for searches "'without a search warrant and with or without cause.'" *Samson*, 547 U.S. at 846 (quoting Cal. Penal Code § 3067).  In contrast, King's probation search condition was as follows:

> Defendant is subject to a warrantless search condition, as to defendant's person, property, premises and vehicle, any time of the day or night, *with or without probable cause*, by any peace, parole or probation officer.

Under the terms of his search condition, then, King was subject to searches without a warrant and "without probable cause."  But King's search condition did not "clear[ly] and unambiguous[ly]" permit searches without *any* modicum of individualized suspicion.  *See Samson*, 547 U.S. at 852.  To the contrary, by specifying that the search could be "without probable cause," the search condition, read in the context of well-developed Fourth Amendment concepts, indicated that

*some* cause was required, just not the relatively high standard of suspicion portended by the term "probable cause."

I note at the outset that the language of King's search condition differs from that of every parole or probation agreement that we or the Supreme Court have analyzed in determining the reasonableness of a warrantless search. I have found no Ninth Circuit or Supreme Court case — and neither the majority nor the government cites any — in which a parole or probation agreement provided for searches "without probable cause" but lacked a provision expressly authorizing searches without reasonable suspicion. The relevant precedents governing the validity of warrantless searches of probationers or parolees either involved (1) probation conditions that stated some standard of suspicion other than that used in King's agreement;**[1]** or (2) the

---

**[1]** *See Knights*, 534 U.S. at 114; *United States v. Baker*, 658 F.3d 1050, 1054 (9th Cir. 2011) ("with or without a warrant, with or without probable cause, and with or without reasonable suspicion"), *overruled in part*, *United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc) (per curiam); *Sanchez v. Canales*, 574 F.3d 1169, 1171 (9th Cir. 2009) ("with or without a search warrant, warrant of arrest or reasonable cause"), *overruled in part*, *King*, 687 F.3d at 1189; *Moreno v. Baca*, 431 F.3d 633, 637 (9th Cir. 2005) ("without a warrant"), *overruled in part*, *King*, 687 F.3d at 1189.

I note that *Sanchez* misstated California law when it reported that "every *probationer* in California is required to 'submit his . . . person, property, place of residence, vehicle, [and] personal effects, to search at any time, *with or without* a search warrant, warrant of arrest or *reasonable cause* by any probation officer or officer of the law.'" 574 F.3d at 1171 (emphasis added). *Sanchez* did not specify the source for its quoted statement. As I understand California law, and as the parties in this case have briefed it, all California *parolees* are subject to a search condition "with or without a search warrant or with or without cause," Cal. Penal Code § 3067(b)(3), but *probationers* are not automatically subject to any

condition mandated by California Penal Code § 3067 for all parolees.[2]

As is apparent from the varied wordings of the search conditions in the aforementioned probation cases, California judges do not uniformly impose the same search conditions on all probationers, nor do they necessarily impose on probationers the terms of the mandatory parole condition. *See supra* nn.1–2. Unlike the majority, I assume that King's sentencing judge chose the particular words in King's search condition as the judge "determined . . . fitting and proper," *see* Cal. Penal Code § 1203.1(j), and I would give effect to the particular language used.

The difference between the probable cause standard[3] and the lesser reasonable suspicion standard[4] is fundamental to

---

search condition, though a court "may impose . . . reasonable conditions[] as it may determine are fitting and proper," *id.* § 1203.1(j).

[2] *See Samson*, 547 U.S. at 846 (quoting Cal. Penal Code § 3067) ("'without a search warrant and with or without cause'"); *United States v. Lopez*, 474 F.3d 1208, 1209 (9th Cir. 2007) (same), *overruled in part*, *King*, 687 F.3d at 1189; *Motley v. Parks*, 432 F.3d 1072, 1075 n.2 (9th Cir. 2005) (en banc) (same), *overruled in part*, *King*, 687 F.3d at 1189.

[3] "Probable cause exists where the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (alterations in original) (internal quotation marks omitted).

[4] "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion

Fourth Amendment law.**⁵**    Although neither standard is "finely-tuned," *see Ornelas v. United States*, 517 U.S. 690, 696 (1996) (internal quotation marks omitted), the reasonable suspicion standard requires "at least a minimal level of objective justification," *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  So the sentencing judge's decision to limit the probation search condition to searches conducted without

---

can arise from information that is less reliable than that required to show probable cause."  *Alabama v. White*, 496 U.S. 325, 330 (1990).

The Supreme Court recently described the quantum of suspicion that an officer must have before conducting a warrantless search under each standard: For searches that require probable cause, the officer must know that the search "raise[s] a 'fair probability' or a 'substantial chance' of discovering evidence of criminal activity."  *Safford*, 557 U.S. at 371 (internal citations omitted).   For searches that require reasonable suspicion, there need only be "a moderate chance of finding evidence of wrongdoing."  *Id.*

California cases sometimes use the terms "reasonable suspicion" and "reasonable cause" interchangeably.  *See, e.g.*, *People v. Letner*, 50 Cal. 4th 99, 146–47 (2010); *People v. Souza*, 9 Cal. 4th 224, 232 (1994) (citing *In re Tony C*, 21 Cal. 3d 888 (1978)).   The Supreme Court has occasionally done so as well.  *See Adams v. Williams*, 407 U.S. 143, 147 (1972) (describing the requisite level of suspicion required for a stop-and-frisk under *Terry v. Ohio*, 392 U.S. 1 (1968), as "reasonable cause").

**⁵** *See, e.g.*, *Safford*, 557 U.S. at 377 (requiring reasonable suspicion, but not probable cause, that a student has concealed contraband in her underwear before school officials may conduct a strip search); *Maryland v. Buie*, 494 U.S. 325, 334–35 (1990) (permitting searches incident to arrests upon reasonable suspicion that danger to arresting officers exists); *Terry*, 392 U.S. 1 (authorizing protective stop-and-frisks without probable cause but with reasonable suspicion); *United States v. Becerra-Garcia*, 397 F.3d 1167, 1174 (9th Cir. 2005) (noting that under the Fourth Amendment, "investigative traffic stops" require "only reasonable suspicion").

probable cause, while *not* stating that searches could be conducted in the absence of reasonable suspicion, has import in the Fourth Amendment lexicon.

Moreover, as I have noted, California's mandatory parole condition includes the term "with or without cause," *see supra* pp. 13–14 & n.2; that provision covers the entire universe of searches, including those conducted without *any* cause. King's search condition was conspicuously narrower, authorizing searches only "with or without probable cause." Had the judge who placed King on probation meant to permit a search without *any* suspicion or cause, he could have used the mandatory parole condition language. But he did not, indicating an intent to deviate from the "no cause" condition signified by that locution.

The majority cites two California Supreme Court cases for the proposition that as a matter of California law, King's particular search condition *was* an agreement "to be subject to suspicionless searches." Op. at 4 n.3 (citing *People v. Woods*, 21 Cal. 4th 668, 674–75 (1999); *People v. Bravo*, 43 Cal. 3d 600, 609–10 (1987)). After *Knights* and *Samson* — both decided after *Woods* and *Bravo* — these California cases cannot control here with regard to the impact of the condition's wording on King's reasonable expectation of privacy.

Federal law, not California law, governs the ultimate question before us, which is whether the San Francisco police's search of King's residence was permissible under the Fourth Amendment. *See, e.g.*, *United States v. Davis*, 932 F.2d 752, 758 (9th Cir. 1991) (noting that "the validity of a search conducted by state law enforcement officers is ultimately a question of federal law").

*Knights* and *Samson* make clear that the California Supreme Court's analysis in *Woods* and *Bravo* is inapposite, and so not binding, here. *Woods* and *Bravo* upheld warrantless, suspicionless searches of probationers based on two interrelated factors: that 1) the probationers had "validly consent[ed] in advance to warrantless searches in exchange for the opportunity to avoid service of a state prison term," *Woods*, 21 Cal. 4th at 674 (citing *Bravo*, 43 Cal. 3d at 608, and *Schenckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)); and 2) that courts should not interpret "minor differences in the wording of search conditions in other probation orders" as having any significance in the scope of a probationer's consent to searches, *Bravo*, 43 Cal. 3d at 606–07.

*Knights* and *Samson* abjure reliance on either of the California Supreme Court's rationales. Each of the U.S. Supreme Court precedents expressly declined to adopt the central holding of *Bravo*, reiterated in *Woods*, that "'acceptance of the search condition constituted consent in the *Schneckloth* sense of a complete waiver of . . . Fourth Amendment rights.'" *Samson*, 547 U.S. at 852 n.3 (quoting *Knights*, 534 U.S. at 118) (internal citation omitted). Instead, *Knights* and *Samson* each followed a Fourth Amendment balancing approach, under which the search condition is pertinent not as evidencing consent but as partially indicative of the probationer or parolee's reasonable expectation of privacy. And, in implementing that approach, neither followed *Bravo*'s rough, generic interpretation of the search conditions, even though *Samson* and *Knights* were both cases involving search conditions in California. Instead of relying on *Bravo*'s generic interpretation of all warrantless search conditions — as the majority here does — the U.S. Supreme Court proceeded to analyze the "plain terms" of the search conditions. *See id.* at 852.

In doing so, *Samson* repeatedly emphasized the significance of the fact that the search conditions in both *Knights* and *Samson* were "clear and unambiguous," explaining that in *Knights*, in determining the reasonableness of the search conducted pursuant to Knights's probation condition, "[w]e . . . considered the facts that Knights' probation order *clearly* set out the probation search condition, and that Knights was *clearly* informed of the condition. . . . [W]e found that acceptance of a *clear and unambiguous* search condition 'significantly diminished Knights' reasonable expectation of privacy.'" *Samson*, 547 U.S. at 849, 852 (quoting *Knights*, 534 U.S. at 120) (emphasis added). With regard to the search condition at issue in *Samson*, the Court noted that the condition "was '*clearly* expressed' to [Samson]." *Id.* at 852 (quoting *Knights*, 534 U.S. at 119) (emphasis added). *Samson* further explained that the "*plain* terms of the . . . search condition" were a central factor in evaluating the searched party's reasonable expectation of privacy. *Id.* (emphasis added).

Over and over, then, *Samson* and *Knights* stressed the importance of the "plain," "clear[]," and "unambiguous," terms of the search conditions in those cases. We are of course bound by the "mode of analysis" of the United States Supreme Court in deciding Fourth Amendment questions, *see United States v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009), not that of the California Supreme Court.[6]  Applying

---

[6] The California Supreme Court decided *Woods* and *Bravo* under federal constitutional standards, not under some separate state law ground under which we might be bound or that might feed into our interpretation of King's search condition under the totality of the circumstances analysis. *Compare Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 427 (9th Cir. 2011) (noting that "[w]hen interpreting state law, federal courts are bound by decisions of the state's highest court") (internal quotation marks

the principles set forth in *Knights* and *Samson*, I would conclude, for the reasons explained above, *see supra* pp. 12–16, that King's search condition did not plainly, clearly, and unambiguously provide notice that he was subject to searches without even reasonable suspicion. Because King was not as a condition of probation subject to searches conducted without that quantum of suspicion, the search condition did not diminish King's privacy interests in any sense relevant to the suspicionless search at issue in this case.

B

The next relevant consideration in assessing King's privacy interests is King's status as a probationer. *See Samson*, 547 U.S. at 850; *Knights*, 534 U.S. at 119.

While the Supreme Court has held that parolees may be subject to suspicionless searches, *Samson*, 547 U.S. at 857, the Court has never held that a suspicionless search of a probationer would pass Fourth Amendment muster, *see Knights*, 534 U.S. at 120 n.6. The Court has instead emphasized that probationers have greater Fourth Amendment interests than parolees. *See Samson*, 547 U.S. at 850. *Samson*, in turn, cited approvingly to Judge Kleinfeld's

omitted). Under the California Constitution, California courts may only grant a suppression motion when "exclusion is mandated by the federal Constitution." *People v. Robinson*, 47 Cal. 4th 1104, 1119 (2010) (citing Cal. Const. art. 1 § 28(f)(2)). *Woods* and *Bravo*, in turn, upheld searches of probationers under the Fourth Amendment, not under some separate state law standard. *See Woods*, 21 Cal. 4th at 674 (citing Cal. Const. art. 1 § 28); *see also Bravo*, 43 Cal. 3d at 603 n.3 (noting that the search in *Bravo* occurred before the relevant California constitutional provision was enacted, but that the court's analysis would be identical whether under the California Constitution or the federal constitution).

concurring opinion in *United States v. Crawford*, 372 F.3d
1048 (9th Cir. 2004) (en banc), in which Judge Kleinfeld
wrote separately "to clarify the distinction between parolees
and probationers," "who are near opposite ends of the
punishment scale." *Id.* at 1076–77 (Kleinfeld, J., concurring);
*see Samson*, 547 U.S. at 855. And our court recently deemed
the distinction between parolees and probationers so
important that we went en banc to overrule our case law that
conflicted with *Samson* insofar as it held that "'there is no
constitutional difference between probation and parole for
purposes of the fourth amendment,'" *King*, 687 F.3d at 1189
(quoting *Motley*, 432 F.3d at 1083 n.9)), and had "overlooked
the important distinction between parolees and probationers,"
*see United States v. Baker*, 658 F.3d 1050, 1059 (9th Cir.
2011) (Graber, J., concurring).

The constitutionally significant difference between
probationers' and parolees' reasonable expectations of
privacy stems from the fundamental difference between the
circumstances under which persons are sentenced to the two
forms of state supervision. Often, "[p]arolees are persons
who have been sentenced to prison for felonies and released
before the end of their prison terms." *Crawford*, 372 F.3d at
1077 (Kleinfeld, J., concurring). *But see* Cal. Penal Code
§ 3000 (requiring parole for persons released from prison
upon *completion* of their prison terms). In California, every
person released from state prison is placed on parole
"irrespective of whether the inmate is capable of integrating
himself back into productive society." *Samson*, 547 U.S. at
854 (citing Cal. Penal Code §§ 2931, 2933, 3000 (West
2000)). Probationers, in contrast, may have been convicted
of an infraction, misdemeanor, or felony. *Crawford*, 372 F.3d
at 1077 (Kleinfeld, J., concurring); *see* Cal. Penal Code
§ 1203. And in California, even if a person is convicted of a

felony, as King was, he can only be sentenced to probation if the sentencing judge has determined, based on the facts and circumstances of the offense and the history and characteristics of the defendant, "that there are circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be served by granting probation to the person." Cal. Penal Code § 1203(b)(3). As Judge Kleinfeld aptly put the point: "Unlike parolees, who were sent to prison for substantial terms, probationers attain that status from a judicial determination that their conduct and records do not suggest so much harmfulness or danger that substantial imprisonment is justified." *Crawford*, 372 F.3d at 1077 (Kleinfeld, J., concurring).

In light of the Supreme Court's and our case law distinguishing between probationers' and parolees' reasonable expectations of privacy, I cannot accept the majority's conclusion that King's privacy interest was so "small" as to permit entirely suspicionless searches. *See* Op. at 9. I recognize that King's status as a probationer *diminished* his expectation of privacy. *See Knights*, 534 U.S. at 120. But I cannot go along with discounting his privacy interests to the minimal level the majority posits, especially in his residence, where Fourth Amendment rights are particularly "sacrosanct." *See United States v. Duenas*, 691 F.3d 1070, 1080 (9th Cir. 2012) (citing *United States v. Jones*, 132 S. Ct. 945, 951 (2012)).

*   *   *

The majority holds that the San Francisco police's suspicionless search of King's residence, pursuant to a probation agreement that did not clearly permit searches with less than reasonable suspicion, "intruded on [King's]

legitimate expectation of privacy only slightly." Op. at 9. I would give greater weight than the majority to the Supreme Court's admonition that the "permissible degree" of "impingement upon [probationers'] privacy" "is not unlimited." *See Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). Under the circumstances of this case — including the limited search condition — King had a moderate privacy interest, albeit one somewhat diminished by his status as a probationer.

## II

I agree with the majority that under the Supreme Court's analysis in *Samson* and *Knights*, the government has legitimate interests in supervising probationers, *see Samson*, 547 U.S. at 853; *Knights*, 534 U.S. at 120, interests which the Court has accorded significant weight in authorizing warrantless searches of probationers and parolees. I nonetheless have two disagreements with the majority's analysis of the government's interests here.[7]

First, the government's interest in "'apprehending violators of the criminal law, thereby protecting potential victims' from probationers' recidivism," Op. at 9 (quoting *Knights*, 534 U.S. at 121), is not as compelling with regard to probationers as with regard to parolees. *Knights* cited a 43% recidivism rate for felons on probation as a factor in authorizing warrantless searches of probationers based on

---

[7] For the reasons explained in Part I.A, *supra*, I disagree with the majority's assertion that the government's general "interest in discovering criminal activity and preventing the destruction of evidence" is heightened by King's "agree[ment]" to this particular search condition. *See* Op. at 9–10.

*reasonable suspicion* of criminal activity.  534 U.S. at 120 (citation omitted).  *Samson* cited a 68–70% recidivism rate for parolees as a factor in permitting warrantless searches of parolees without even reasonable suspicion.  547 U.S. at 853–54 (citation omitted).  Although both recidivism rates are considerable, the rate for probationers is substantially lower. As one of several factors to assess under the totality of the circumstances approach, I would conclude that the state's interest in crime prevention is somewhat weaker here than in *Samson*.

Second, the mere fact that the Supreme Court has described the government's interests in preventing crime among probationers and parolees as "substantial," and has articulated several justifications for why this is so, *see id.* at 853–55; *Knights*, 534 U.S. at 120–21, cannot alone allow suspicionless searches.   The government *always* has a "general interest in crime control."  *City of Indianapolis v. Edmond*, 531 U.S. 32, 42 (2000).   Fourth Amendment protections exist precisely to prevent "intrusions" on the fundamental right of privacy "from becoming a routine part of American life," *in the face of* the substantial interest in preventing crime and apprehending criminals.  *See id.*  So the three-fold government interests the majority articulates — reducing recidivism, discovering criminal activity, and promoting probationers' reintegration, Op. at 9–10 — cannot by themselves bear the weight the majority places on them. The "totality of circumstances" analysis is not an arithmetic problem.  *Cf. Noble v. United States*, 231 F.3d 352, 359 (7th Cir. 2000); *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1298–99 (11th Cir. 1999).

III

Considering both the particular terms of King's search condition, and his probationer (and not parolee) status, I would hold that King had a somewhat greater expectation of privacy than the parolee in *Samson*. And King's probationer status also makes the government's interests at least slightly weaker here than in *Samson*. Weighing the "balance of these considerations," *see Knights*, 534 U.S. at 121, I would hold that King was subject to warrantless searches only upon reasonable suspicion of criminal conduct.

CONCLUSION

Warrantless searches conducted with only reasonable suspicion of criminal activity represent a considerable departure from the generally applicable requirement for a search of a person's residence. The Supreme Court has upheld such searches for probationers, *see Knights*, 534 U.S. 112, but the majority's decision goes one step further, permitting such searches without *any* quantum of suspicion, as long as the probationer has assented to a warrantless search condition, no matter how ambiguously worded. I would not expand the "'closely guarded . . . category of constitutionally permissible suspicionless searches'" further than the Supreme Court already has. *See Samson*, 547 U.S. at 860 (Stevens, J., dissenting) (quoting *Chandler v. Miller*, 520 U.S. 305, 309 (1997)).

I therefore dissent from the majority's decision upholding the district court's order denying King's motion to suppress. I would instead remand to the district court for further

proceedings, including resolution of the factual dispute whether the police obtained valid consent for the search from King's mother.  *See United States v. Prieto-Villa*, 910 F.2d 601, 602 (9th Cir. 1990).