**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. PAULO LARA, *Defendant-Appellant*. | No. 14-50120 D.C. No. 2:13-cr-00392-BRO-1 OPINION |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted
July 7, 2015—Pasadena, California

Filed March 3, 2016

Before: William A. Fletcher, Ricahrd A. Paez, and Marsha
S. Berzon, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Criminal Law

The panel reversed the district court's denial of a motion to suppress evidence obtained as a result of warrantless, suspicionless searches of the defendant's cell phone, and remanded for further proceedings.

The panel noted that a probationer's acceptance of a search term in a probation agreement does not by itself render lawful an otherwise unconstitutional search of a probationer's person or property. The panel wrote that the issue is not solely whether the defendant accepted a cell phone search as a condition of his probation, but whether the search that he accepted was reasonable. Balancing the extent to which the searches intruded on the defendant's substantial privacy interest in his cell phone and the data it contained against the government's interests in combating recidivism and helping probationers integrate back into the community, the panel held that in the circumstances of this case the searches were unreasonable.

The panel concluded that the exception to the exclusionary rule announced in *Davis v. United States*, 131 S.Ct. 2419 (2011), does not apply to the circumstances of this case.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Alexandra Wallace Yates (argued), Deputy Federal Public Defender, Hilary Potashner, Acting Federal Public Defender, Los Angeles, California for Defendant-Appellant.

Stephanie Yonekura, Acting United States Attorney, Robert E. Dugdale, Chief, Criminal Division, and Ryan Weinstein (argued), Assistant United States Attorney, Los Angeles, California for Plaintiff-Appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Appellant-Defendant Paulo Lara appeals his conviction for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). At the time of his arrest, Lara was subject to a term of probation that required him to submit his "person and property, including any residence, premises, container or vehicle" to search and seizure "without a warrant, probable cause, or reasonable suspicion." Lara contends that his Fourth Amendment right to be free of unreasonable searches and seizures was violated when probation officers conducted two warrantless, suspicionless searches of his cell phone. He contends that the exclusionary rule requires the suppression of images, text messages, and GPS data found on his cell phone, as well as a gun and ammunition, as fruits of the illegal searches. We agree.

## I. Factual and Procedural Background

On October 2, 2013, Probation Officers Jennifer Fix and Joseph Ortiz arrived unannounced at Lara's home after he had failed to report to Officer Fix. Lara had recently been placed on probation following a conviction for possession for sale and transportation of methamphetamine in violation of California Health & Safety Code §§ 11378 and 11379(a).

Lara's probation agreement required him to "submit [his] person and property, including any residence, premises, container or vehicle under [his] control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer, with or without a warrant, probable cause, or reasonable suspicion." As part of his probation agreement, Lara initialed a subsection entitled "Fourth Amendment waiver." That subsection provided:

> I understand under the Fourth and Fourteenth Amendments to the United States Constitution, I have a right to be free from unreasonable searches and seizures. I waive and give up this right, and further agree that for the period during which I am on probation or mandatory supervision I will submit my person and property, including any residence, premises, container or vehicle under my control to search and seizure at any time of the day or night by any law enforcement officer, probation officer, post-release community supervision officer, or parole officer, with or without a warrant, probable cause, or reasonable suspicion.

Officer Fix stated in a sworn declaration, consistent with her later in-court testimony, that at her first meeting with Lara she read him the search and seizure term and asked whether he had any questions "concerning that term and what it entails." She stated that is her normal practice to note if a probationer has any questions about the terms, and she had nothing in her notes indicating that Lara had any such questions. Lara stated in a sworn declaration that when he accepted the terms and conditions of probation, he did not believe the search condition would allow his cell phone or data stored on the phone to be searched without his consent.

Officer Fix stated in her declaration, "It is standard protocol for probation officers to search the cell phones of probationers subject to search terms, especially if the probationer had been convicted of a drug trafficking offense." Officer Fix stated that she knew Lara had been convicted of a drug offense when she conducted the search. She stated that she and Officer Ortiz knew, based on their training and experience, that "drug traffickers commonly use cell phones to arrange narcotics sales."

After announcing that they were at the house to conduct a probation search, Officer Fix ordered Lara to sit on the couch. Officer Ortiz stated in a sworn declaration that he spotted a cell phone on a table next to the couch and examined it. He stated that he confirmed that the phone belonged to Lara. Cell phone company records showed that the name of the subscriber was "Peter" Lara, rather than "Paulo" Lara. The address listed on the subscriber record matched Lara's home address where he was found and where the search was conducted.

Officer Ortiz stated that he did not ask Lara's permission to search the cell phone, but that Lara did not object to his doing so.  Officer Fix testified that it is the department's policy to search a cell phone when officers visit a probationer, even if the probationer objects.

Officer Ortiz stated in his declaration that he reviewed the most recently sent text messages on Lara's cell phone and discovered messages containing three photographs of a semiautomatic handgun lying on a bed.  The pictures had been sent to "Al," who responded, asking if the gun was "clean."  Lara replied, "yup."  Al followed up by asking, "What is the lowest you will take for it?" and "How much?"

Officer Ortiz handcuffed Lara, and he and Officer Fix searched Lara's house and car for the gun.  They did not find it, but they did find a folding knife, the possession of which violated the terms of Lara's probation.  Officers Fix and Ortiz arrested Lara for possessing the knife in violation of his probation and brought the cell phone to the Orange County Regional Computer Forensics Lab.

Lab personnel found GPS data embedded in the photographs of the gun and thereby determined the address where they were taken.  Investigation revealed the location to be the home of Lara's mother.  Officer Fix testified at the suppression hearing that without the GPS data, she would not have had reason to visit Lara's mother's house.

Officers Fix and Ortiz, along with officers from the local police department, went to Lara's mother's home and showed her the photographs of the gun.  She directed them to a bedroom that had bedding matching that in the photographs.

In the closet of the bedroom, Officer Fix found a loaded handgun that resembled the gun depicted in the photographs.

Lara was charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the gun and ammunition on the ground that it had been found as a result of illegal searches of his cell phone by Officer Ortiz and the lab.

The district court held a hearing on the suppression motion and denied the motion. When the district court ruled on Lara's suppression motion, the Supreme Court had not yet decided *Riley v. California*, 134 S. Ct. 2473 (2014). In *Riley*, the Court held that police generally may not, without a warrant, examine the digital information stored on a cell phone seized incident to arrest. *Id*. at 2493.

After the district judge denied Lara's suppression motion, Lara pled guilty to the § 922(g)(1) charge, but preserved his right to challenge the denial of his motion. Lara timely appealed.

## II. Standard of Review

We review de novo a district court's denial of a motion to suppress, reviewing for clear error the district court's underlying factual findings. *United States v. Mayer*, 560 F.3d 948, 956 (9th Cir. 2009).

## III. Discussion

The government contends that there are three independent reasons to affirm the district court's denial of Lara's motion to suppress. First, the government contends that Lara

consented to the initial cell phone data search by accepting the terms of his probation agreement, thereby waiving his Fourth Amendment protection against unreasonable searches and seizures.  Second, the government contends that, even if Lara did not waive his Fourth Amendment rights, the warrantless search was lawful because it was reasonable. Third, the government contends that even if the cell phone search was unlawful, the evidence it yielded should not be suppressed because a good faith exception to the exclusionary rule applies.   We are not persuaded by any of these contentions.

## A.  Waiver of Fourth Amendment Rights

Our discussion of the government's contention that Lara waived his Fourth Amendment rights may be brief.  We have already held that a probationer's acceptance of a search term in a probation agreement does not by itself render lawful an otherwise unconstitutional search of a probationer's person or property.  In *United States v. Consuelo–Gonzalez*, 521 F.2d 259, 261 (9th Cir. 1975) (en banc), we held that probationers do not entirely waive their Fourth Amendment rights by agreeing, as a condition of their probation, to "submit [their] person and property to search at any time upon request by a law enforcement officer."  We explained that there is a limit on the price the government may exact in return for granting probation.   *Id*. at 265.   Specifically, "any search made pursuant to the condition included in the terms of probation must necessarily meet the Fourth Amendment's standard of reasonableness."  *Id*. at 262; *see United States v. Scott*, 450 F.3d 863, 868 (9th Cir. 2006) (confirming this reading of *Consuelo-Gonzalez*'s holding).

The issue, therefore, is not solely whether Lara accepted the cell phone search as a condition of his probation, but whether the search that he accepted was reasonable. Lara's acceptance of the terms of probation, including suspicionless searches of his person and property, is one factor that bears on the reasonableness of the search, but it is not in itself dispositive. *See Scott*, 450 F.3d at 868 (suggesting that a defendant's agreement to a search condition in exchange for relief from prison is "a relevant factor in determining how strong his expectation of privacy is"); *accord United States v. Knights*, 534 U.S. 112, 117–18 (2001) (declining to decide whether a probationer's acceptance of a probation term authorizing warrantless searches without probable cause constituted consent sufficient to waive his Fourth Amendment rights, and opting instead to evaluate whether the search was reasonable in light of the totality of the circumstances, including the probationer's acceptance of the search condition).

## B. Reasonableness of the Search

The reasonableness of the search requires a longer discussion. At the outset, we reject the government's suggestion that our decision in *United States v. King*, 736 F.3d 805 (9th Cir. 2013), fully resolves this issue. In *King*, the police conducted a suspicionless search of a violent felon's residence, pursuant to a condition of probation that clearly authorized such a search. We upheld the search but "h[e]ld only that a suspicionless search, conducted pursuant to a suspicionlesss-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment." *Id.* at 810. We expressly limited our holding to violent felons, writing, "We need not decide whether the Fourth Amendment permits suspicionless searches of

probationers who have not accepted a suspicionless-search condition, *or of lower level offenders who have accepted a suspicionless-search condition*, because those cases are not before us." *Id*. (emphasis added). King had been convicted of the violent crime of willfully inflicting corporal injury on a cohabitant. *Id*. at 806. Lara, in contrast, had been convicted of a nonviolent drug crime.

Because *King* does not fully provide the answer, we must, as we did in *King*, evaluate the circumstances of the particular case before us to determine if the search was reasonable. In doing so, we balance, "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which [the search] is needed for the promotion of legitimate governmental interests." *Knights*, 534 U.S. at 119 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). We consider each side of the balance in turn.

### 1. Lara's Privacy Interest

The extent to which the search intruded on Lara's privacy depends on several factors, the most important of which are his status as a probationer, the clarity of the conditions of probation, and the nature of the contents of a cell phone.

First, because Lara is on probation, his reasonable expectation of privacy is lower than someone who has completed probation or who has never been convicted of a crime. *Knights*, 534 U.S. at 120. But while the privacy interest of a probationer has been "significantly diminished," *id*., it is still substantial. The Supreme Court has recognized that a probationer's privacy interest is greater than a parolee's. *Samson v. California*, 547 U.S. 843, 850 (2006).

Furthermore, Lara's reasonable expectation of privacy is greater than that of probationers such as King because he was not convicted of a particularly "serious and intimate" offense. *King*, 736 F.3d at 809.

Second, the cell-phone search condition of Lara's probation was not clear. The Supreme Court in *Knights* explained that a probationer's reasonable expectation of privacy is "significantly diminished" when the defendant's probation order "clearly expressed the search condition" of which the probationer "was unambiguously informed." 534 U.S. at 119–20. But the search term in *Knights* expressly authorized searches of the probationer's "place of residence," which was precisely what the officers searched. *See id.* at 114–15. That is not true here.

Lara agreed to "submit [his] person and property, including any residence, premises, container or vehicle under [his] control to search and seizure." None of these terms—in particular, neither "container" nor "property"—clearly or unambiguously encompasses his cell phone and the information contained therein. Lara's cell phone was not a "container." The Supreme Court wrote in *Riley* that "[t]reating a cell phone as a container whose contents may be searched incident to an arrest" was, at best, "strained." *Riley*, 134 S. Ct. at 2491. Indeed, the analogy between cell phones and containers "*crumbles entirely* when a cell phone is used to access data located elsewhere, at the tap of a screen." *Id.* (emphasis added). We relied on *Riley* in *Camou*, holding that cell phones cannot be searched when officers otherwise have probable cause to search a vehicle and its containers. *United States v. Camou*, 773 F.3d 932, 942–43 (9th Cir. 2014). Just as it makes no sense to call a cell phone a "container" for purposes of a search incident to arrest (*Riley*) or search of an

automobile (*Camou*), it makes no sense to call a cell phone a "container" for purposes of a probation search.

Nor does the word "property" unambiguously include cell phone data, especially when the word is read in conjunction with the language that follows. We repeat the relevant language here: "property, including any residence, premises, container or vehicle under my control." Each of the specific types of property named as examples refer to physical objects that can be possessed. A cell phone is such an object, but cell phone *data*, which were the subject of the two searches in this case, are not property in this sense. Further, the Court recognized in *Riley* that cell phones differ from conventional property in that they provide access to data, such as medical and banking records, that is held by third parties. 134 S. Ct. at 2491. Such information not only cannot be possessed physically; it is also not "under [Lara's] control," as provided in the search condition.

Third, the Court in *Riley* stressed the amount and character of data contained in, or accessed through, a cell phone and the corresponding intrusiveness of a cell phone search. Although *Riley* concerned warrantless searches of cell phones incident to arrest, the Court used sweeping language to describe the importance of cell phone privacy:

> The term "cell phone" is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.

> . . . Most people cannot lug around every
> piece of mail they have received for the past
> several months, every picture they have taken,
> or every book or article they have read—nor
> would they have any reason to attempt to do
> so. And if they did, they would have to drag
> behind them a trunk of the sort held to require
> a search warrant in *Chadwick*, [433 U.S. 1
> (1977),] rather than a container the size of the
> cigarette package in *Robinson*[, 414 U.S. 218
> (1973)].

*Riley*, 134 S. Ct. at 2489. A cell phone search "would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." *Id.* at 2491.

In an attempt to undercut the foregoing, the government argues that Lara's expectation of privacy in his cell phone data was diminished by the fact that his cell phone contract gave his name as "Peter" rather than "Paolo" Lara, contending that Lara gave a "false name" to his cell phone carrier in order to evade detection by law enforcement. The government's argument is highly speculative, almost fanciful. If Lara sought to avoid law enforcement detection by providing an anglicized first name when dealing with his cell phone carrier, he chose a singularly ineffective means of achieving that goal, especially when at the same time he gave his actual last name and home address.

In sum, we conclude that Lara had a privacy interest in his cell phone and the data it contained. That privacy interest was substantial in light of the broad amount of data contained in, or accessible through, his cell phone. We recognize that his privacy interest was somewhat diminished in light of Lara's status as a probationer. But it was not diminished or waived because he accepted as a condition of his probation a clear and unequivocal search provision authorizing cell phone searches (he did not) or because he subscribed to cell phone service using a different first name (he did).

## 2. The Government's Interest

Probationary searches advance at least two related government interests — combating recidivism and helping probationers integrate back into the community. *See Samson*, 547 U.S. at 849; *Knights*, 534 U.S. at 120–21. These are important interests whose strength in a particular case varies depending on the degree to which the government has a specific reason to suspect that a particular probationer is reoffending or otherwise jeopardizing his reintegration into the community. In *Knights*, the officers had substantial evidence showing that while on probation Knights had vandalized and set fire to an electrical facility and an adjoining telecommunications vault, causing an estimated $1.5 million in damages. 534 U.S. at 114. In *King*, the officers suspected that the defendant was involved in a homicide and knew that he had been previously convicted of the violent crime of willful infliction of corporal injury on a cohabitant. 736 F.3d at 806. In contrast, in this case Lara had merely missed a meeting with his probation officer. We do not minimize the importance of complying with the terms of probation, including meeting at appointed times with the probation officer. But Lara's noncompliance was worlds

away from the suspected crimes that prompted the searches in *King* and *Knights*.

We recognize that Officer Ortiz searched Lara's cell phone knowing that he had been convicted of a drug crime and knowing that drug traffickers often use cell phones to arrange sales.  Given the ubiquity of cell phones, almost any crime involving more than a single person (and indeed many crimes involving just one person) would entail the use of cell phones, which can be used not only for placing calls and sending text messages, but also for sending emails, looking up directions, and conducting internet searches on various topics.  This ubiquity cuts against the government's purported heightened interest in conducting suspicionless searches of the cell phones of probationers with controlled substances convictions.

### 3.  Balancing

On balance, we hold that in the circumstances of this case the searches of Lara's cell phone were unreasonable.  "[W]hen 'privacy-related concerns are weighty enough' a 'search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee.'" *Riley*, 134 S. Ct. at 2488 (quoting *Maryland v. King*, 133 S. Ct. 1958, 1979 (2013)).  The same is true of probationers, especially nonviolent probationers who have not clearly and unambiguously consented to the cell phone search at issue.  Because of his status as a probationer, Lara's privacy interest was somewhat diminished, but that interest was nonetheless sufficiently substantial to protect him from the two cell phone searches at issue here.

C.  Exception for "Binding Appellate Precedent"

At the end of its fifty-five page brief to this court, the government spends two-and-a-half pages arguing that even if the two searches of Lara's cell phone violated the Fourth Amendment, a good faith exception to the exclusionary rule should apply.  The government did not make this argument in the district court, and consequently it has failed to preserve this argument on appeal.  Even if we were willing to assume that the government did not waive this argument, we would reject it on the merits.

The government relies on *Davis v. United States*, 131 S. Ct. 2419 (2011), where the Supreme Court held that if an officer objectively relied on "binding appellate precedent" that "specifically *authorize*[*d*]" the officer's search, evidence obtained as a result of that search need not be suppressed. 131 S. Ct. at 2423–24, 2429.  At the time of the search in *Davis*, the Court's decision in *New York v. Belton*, 453 U.S. 454 (1981), was understood to allow warrantless searches of passenger compartments of vehicles incident to the arrest of recent occupants of the vehicle.  *Id.* at 2424.  The Eleventh Circuit "had long read *Belton* to establish a bright-line rule authorizing substantially contemporaneous vehicle searches incident to arrests of recent occupants."  *Id.* at 2426 (citing *United States v. Gonzalez*, 71 F.3d 819, 822, 824–27 (11th Cir. 1996)).  The Supreme Court subsequently modified the rule of *Belton*, holding that a vehicle search incident to arrest is valid only if the arrestee is within reaching distance of the passenger compartment during the search.  *Arizona v. Gant*, 556 U.S. 332 (2009).   In *Davis*, officers conducted their search after the arrestee was removed from the vehicle and placed in a patrol car.  Thus, the search in *Davis* was valid under *Belton* and *Gonzalez*, but not under *Gant*.

The Court held in *Davis* that the search was invalid under the Fourth Amendment, but declined to suppress the evidence seized. The Court wrote:

> The question here is whether to apply this sanction [of suppressing the evidence] when the police conduct a search in compliance with *binding precedent* that is later overruled. Because suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety, we hold that searches conducted in objectively reasonable reliance on *binding appellate precedent* are not subject to the exclusionary rule.

*Id.* at 2423–24 (emphases added). The rule in *Davis* is clear: a search conducted in objectively reasonable reliance on "binding appellate precedent" that "specifically authorizes" the police's search does not result in suppression, even if it turns out, based on a later decision, that the previously binding precedent is no longer binding.

We decline to expand the rule in *Davis* to cases in which the appellate precedent, rather than being binding, is (at best) unclear. If the question were qualified immunity, the fact that the precedent is unclear would protect an individual officer from damages. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001). But the question under *Davis* is not whether an officer should be shielded from damages liability. Rather, the question is what protection the Fourth Amendment affords a private individual from an unconstitutional search and seizure. The Court in *Davis* addressed that question by

denying suppression only when "binding appellate precedent" expressly instructed the officer what to do.

The government points out that *Riley* was not decided until after the searches in this case. But the government cites no pre-*Riley* case that constituted "binding appellate precedent" upon which the officers could reasonably have relied at the time of the searches. Rather, the government cites only cases from which it could have plausibly argued that the searches were permissible. It cites *People v. Diaz*, 244 P.3d 501, 502 (Cal. 2011), in which the California Supreme Court upheld a warrantless cell phone text message folder search after an arrest as having been "incident to a lawful custodial arrest." It hardly needs saying that a search incident to arrest is not the same thing as a warrantless, suspicionless, probation search. Nor is a case dealing with an incidental search on all fours with a probation search. Further, the government cites pre-*Riley* conflicting authority in the California Court of Appeal and in the Ninth Circuit with respect to the effect of a probationer's consent to searches. *Compare People v. Medina*, 158 Cal. App. 4th 1571, 1576 (2007), *with United States v. Scott*, 450 F.3d 863, 868 (9th Cir. 2006). Even if we were to consider state intermediate court of appeals decisions to be "binding appellate precedent" within the meaning of *Davis* (a question we do not decide), a conflict between the state appellate court and the Ninth Circuit with respect to a question in a case that could be brought to either court can hardly be thought to result in "binding appellate precedent."

We therefore conclude that the exception to the exclusionary rule announced in *Davis* does not apply to the circumstances of this case.

Conclusion

We conclude that the initial search of Lara's cell phone data was unlawful and that the exclusionary rule bars the admission of the evidence that was the fruit of that unlawful search. Because the second search of Lara's cell phone was itself the product of the initial unlawful search, the evidence from that search should also have been excluded. We therefore reverse the district court's denial of Lara's motion to suppress and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED**.