**Opinion issued November 27, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00076-CR

_____

**MATTHEW D. HOWARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1553508**

---

# O P I N I O N

Matthew Howard was convicted in 2009 of sexual contact with a minor under the age of sixteen, child pornography, and wrongfully impeding an investigation. He was sentenced to 15 years' confinement in a federal military prison. In January 2017, Howard was released to supervised residency—akin to

parole—at Leidel Halfway House, a federal residential re-entry facility. Leidel's residency rules prohibit the possession of unauthorized mobile phones and grant staff the right to search residents' personal "belongings." After two months at Leidel, during a random head count, Howard was found in possession of a contraband mobile phone. Leidel staff confiscated the phone and did a "cursory review" of its contents, where they found child pornography. The Federal Bureau of Investigations and local law enforcement were contacted. Law enforcement personnel requested search warrants at the federal and state levels, but the search warrants were requested and issued only after federal and state law enforcement personnel viewed the contents of the phone and confirmed it contained images of child pornography. Howard was charged with possession of child pornography under Texas state law.

Howard filed a motion to suppress evidence obtained from his phone. While Howard conceded that the Leidel residency rules forbid him and other sex-offender parolees from possessing internet-accessible mobile phones and that his phone was, as a result, contraband, Howard argued that the search of his phone's contents violated his Fourth Amendment protections because it was performed before a warrant issued and he did not otherwise consent to the search. Howard's motion was denied. He pleaded guilty and was sentenced to 10 years' confinement. The

trial court certified his right to appeal the denial of his motion to suppress. In a single issue, Howard contends that the trial court erred in denying his motion.

We affirm.

## Warrantless Search of Parolee's Contraband Mobile Phone

Howard contends that the trial court erred in denying his motion to suppress because he had a privacy interest in the contents of his contraband mobile phone, the Fourth Amendment protects that privacy interest, and the results of the unconsented to, warrantless search should have been inadmissible in his criminal proceeding.

### A.    Standard of review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). First, we afford "almost total deference" to the trial court's determination of historical facts and rulings on mixed questions of law and fact that depend on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Carmouche*, 10 S.W.3d at 327; *Sayers v. State*, 433 S.W.3d 667, 673 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The "trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Sayers*, 433 S.W.3d at 673. The trial court may believe or disbelieve all or

part of the witnesses' testimony. *Ross*, 32 S.W.3d at 855; *Sayers*, 433 S.W.3d at 673. Second, we review de novo the trial court's rulings on questions of law and mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Gonzales*, 369 S.W.3d at 854; *Carmouche*, 10 S.W.3d at 327; *Sayers*, 433 S.W.3d at 673.

When neither party requests findings of fact or conclusions of law, we imply the necessary findings to support the trial court's ruling, so long as the evidence viewed in the light most favorable to the trial court's ruling supports those findings. *Davila v. State*, 441 S.W.3d 751, 756 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We will uphold the trial court's ruling if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *see Sayers*, 433 S.W.3d at 673.

**B.      Fourth Amendment protections for parolees**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV; *see* TEX. CONST. art. I, § 9. The "ultimate touchstone" of the Fourth Amendment is the reasonableness of the search. *Riley v. California*, 134

S. Ct. 2473, 2482 (2014). Whether a person's Fourth Amendment rights have been compromised by a warrantless search of his possessions depends on whether, first, the person had a subjective expectation of privacy in those belongings, and, second, if so, whether that subjective expectation of privacy is one that society is prepared to recognize as reasonable under the circumstances. *Carpenter v. United States*, 138 S. Ct. 2206, 2213–14 (2018);[1] *see Love v. State*, 543 S.W.3d 835, 840–41 (Tex. Crim. App. 2016). The question here, then, is whether Howard, as a sex-offender parolee in possession of a contraband mobile phone at a half-way house that prohibited its possession, had a subjective expectation of privacy in his phone's contents, and whether society would regard that expectation as objectively reasonable or justifiable under the circumstances. *Carpenter*, 138 S. Ct. at 2213.

The Supreme Court has addressed warrantless searches of probationers and parolees. *See United States v. Knights*, 534 U.S. 112 (2001) (probationer); *Samson v. California*, 547 U.S. 843 (2006) (parolee). In *Knights*, the Court upheld a warrantless search of a probationer's apartment because a condition of his

---

[1] The *Carpenter* dissents argued that neither the history nor the text of the Fourth Amendment supports expanding constitutional protections to privacy-based, as opposed to property-based interests; instead, they argued, the Fourth Amendment protects the right of people to be secure in "*their* persons, houses, papers, and effects" against unreasonable searches and seizures. *Carpenter v. United States*, 138 S. Ct. 2206, 2235–36 (2018) (Thomas, J., dissenting) (quoting U.S. Const. amend. IV); *see id.* at 2226 (Kennedy, J., dissenting); *Id.* at 2247 (Alito, J., dissenting); *Id.* at 2264 (Gorsuch, J., dissenting). It is undisputed that this was Howard's mobile phone and that he possessed the contraband phone while on parole and in violation of the rules of the half-way house where he resided.

probation was that he submit to warrantless searches without reasonable cause and, under the facts, there was reasonable suspicion to conduct the search. 534 U.S. at 121–22. The Court stated, "Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* at 119 (internal quotation omitted). And courts "granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id.*

The warrantless-search probation condition diminished the probationer's expectation of privacy in his apartment. *Id.* at 119–20. On the other hand, the State had an interest in the probationer successfully completing probation and integrating back into the community and an interest in addressing its justified concern that probationers are more likely to engage in criminal conduct than ordinary members of the community. *Id.* at 119.

Balancing the probationer's diminished privacy interest against the State's legitimate governmental interests, the Court held that a standard less than probable cause applied in the context of a warrantless search involving a probationer who is subject to a warrantless-search probation condition. *Id.* at 121. In that context, the Fourth Amendment requires only reasonable suspicion that the probationer is engaged in criminal activity, and reasonable suspicion existed. *Id.*

6

The Court addressed the privacy interests of parolees in *Samson* and concluded that "parolees have fewer expectations of privacy than probationers" because "parole is more akin to imprisonment than probation is to imprisonment." 547 U.S. at 850. In *Samson*, a parolee was stopped as he walked down the street, searched without a warrant, and found to be in possession of drugs. *Id.* at 846–47. A condition of his parole was that he submit to warrantless searches without cause. *Id.* Again, the Court applied a balancing test, considering the parolee's diminished privacy interest and the legitimate governmental interests. *Id.* at 848. The Court recognized an "overwhelming" governmental interest in supervising parolees because they are more likely to commit future criminal offenses, have a high recidivism rate, and therefore require close supervision. *See id.* at 853.

Balancing the parolee's diminished privacy interest against the strong governmental interests, the Court held that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee who is subject to a warrantless- and suspicionless-search parole condition. *See id.* at 857; *see also State v. Villarreal*, 475 S.W.3d 784, 802, 812 (Tex. Crim. App. 2014) (rejecting argument that *Samson* presented issue of waiver of constitutional rights and recognizing, instead, that holding was based on general Fourth Amendment totality-of-the-circumstances analysis weighing privacy interests against governmental interests).

Howard also is a parolee. He seeks to distinguish the search of his mobile phone from *Samson* in two regards. First, Leidel notified him only that any unauthorized mobile phone would be confiscated and that he would be disciplined if he violated the phone policy, not that his phone would be searched without a valid warrant. Second, a recent Supreme Court case has recognized a privacy interest in the contents of personal mobile phones that is greater than the privacy interest held in other personal possessions. *See Riley*, 134 S. Ct. at 2488–91 (holding that incident-to-arrest exception to Fourth Amendment does not authorize warrantless search of contents of mobile phone seized during person's lawful arrest). Howard argues that parolee-search cases like *Samson* must be read in light of the protections later recognized in *Riley* for personal information stored on mobile phones. We consider both arguments below.

### 1.  Parole conditions and privacy expectations

Howard was subject to two different release conditions: (1) those imposed by the Department of Justice upon his release from federal military prison and (2) his half-way house's residency rules and conditions. He argues that his release conditions were less intrusive than in *Samson* and other parolee-search cases.

### a.  Federal release conditions

Howard's Department of Justice certificate of mandatory supervision was prepared pursuant to the Department of Justice regulation governing mandatory

8

supervision of a released military prisoner. 28 C.F.R. § 2.35(d). That regulation states that an individual released under its provision "shall be deemed to be released as if on parole, and shall be subject to the conditions of release at § 2.40." *Id.*

Section 2.40, in turn, incorporates general conditions of release that apply to all released individuals. *See id.* § 2.40(a)(1) ("All persons on supervision must follow the conditions of release described in § 2.204(a)(3) through (6)."). The general conditions do not include a global authorization of warrantless searches but do require that released individuals allow supervising officers to "seize any item that the officer reasonably believes is an item you are prohibited from possessing (for example, an illegal drug or a weapon), and that is in plain view in your possession, including in your home, workplace or vehicle." *Id.* § 2.204(a)(4)(iv).

Section 2.40 also states that special conditions of release may be imposed, depending on the circumstances involved. *See id.* § 2.40(b). Examples of available special conditions are listed in Section 2.204. *Id.* § 2.204(b)(2). One special condition is a requirement that released individuals "permit a supervision officer to conduct a search of your person, or of any building, vehicle or other area under your control, at such time as that supervision officer decides, and to seize any prohibited items the officer, or a person assisting the officer, may find." *Id.* § 2.204(b)(2)(iv).

9

Howard's certificate of mandatory supervision contains a seizure condition but no search condition. Condition Twelve requires that Howard "shall permit confiscation by [his] Probation Officer of any materials which [his] Probation Officer believes may constitute contraband in [his] possession and which [his] Probation Officer observes in plain view in [his] residence, place of business or occupation, vehicle(s) or on [his] person." There is no general authorization to search confiscated contraband. Nor is there a specific authorization to search the digital content of a confiscated electronic device, such as a mobile phone, or, as may arise in other scenarios, a digital camera, computer, or USB drive.

Thus, Howard's federal release conditions did not notify him that a condition of his parole was a requirement that he submit to a suspicionless search. *Samson* is distinguishable in this regard because the *Samson* parolee had been notified, as a condition of his parole, that he was subject to suspicionless searches, and that notice was held to have diminished his expectation of privacy. *See* 547 U.S. at 857; *see also* 7A Michael J. McCormick et al., *Texas Practice: Criminal Forms and Trial Manual* § 90.22 n.1 (11th ed. 2018) ("Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee. California law requires each parolee to agree in writing to such searches.") (citing *Samson*, 547 U.S. 843).

Because Howard did not have such a search condition placed on his release from federal military prison, his conditions of release do not bring the facts of his search squarely within *Samson*. We consider next whether Leidel's policies—the focus of Howard's argument—affect the level of privacy a sex-offender parolee resident, like Howard, might expect with regard to the content of a contraband mobile phone.

### b. Leidel's conditions

Howard asserts that Leidel's rules authorize only the confiscation of contraband phones and not the warrantless search of their contents and, therefore, do not diminish his expectation of privacy in the contents of his mobile phone.

Leidel's intake packet, signed by Howard, contains a section addressing communication devices, which states that mobile phones are not allowed unless authorized by Leidel and affixed with a Leidel-supplied approval tag. But not every type of mobile phone is subject to approval: for a resident to obtain authorization to possess a mobile phone, the phone must have only basic call and text features and cannot have advanced features, like a camera, recording device, or internet access, that could be used to obtain sexually explicit material.

The intake packet further informs residents that those who abuse a granted privilege of possessing a phone may have their privileges revoked. The intake

11

packet notifies residents that possession of an unauthorized mobile phone will result in two actions:

1) the item(s) will be confiscated and either held until [the resident's] release or disposed of per the Leidel SCS guidelines.[2]

2) Disciplinary action will be taken.

Later, the intake packet elaborates that possession of an unauthorized mobile phone will result in confiscation, an incident report, and possible sanctions, including removal from Leidel House.

While we agree that these Leidel forms—like the conditions of release discussed above—do not specifically authorize a search of confiscated materials, they are not the only applicable provisions. A different section of the intake packet concerns "search and seizure" policies. It authorizes staff, in general terms, to "search any resident, resident's belongings, or resident's cubicle at any time."

Belongings are a category of possessions. *See Belonging*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (5th ed. 2014) (defining *belonging* as "possessions; property"); *Belongings*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining *belongings* as "personal property; effects"). But they are more personal in nature than other categories of possessions. *See Possessions, Belongings, Effects*, GARNER'S DICTIONARY OF LEGAL USAGE (3d ed. 2011) (distinguishing *belongings* from *possessions* and *effects* by stating that the term *belongings* "suggests items

---

[2]     The Leidel SCS guidelines are not in the record.

12

more closely associated with the owner or the owner's sentiments, including not only clothes and toiletries but also family albums, valuable keepsakes, and the like").

As a textual interpretation matter, it is evident that a mobile phone is a *belonging*, just like a photo album, camera, book, and magazine—any of which could contain pornography and would be subject to search under Leidel's residency rules. But Howard argues that the Supreme Court's recent holding in *Riley* distinguishes mobile phones from other personal belongings and recognizes a greater expectation of privacy in mobile phone content, as a constitutional matter, even if it falls within the generally understood meaning of the term *belongings*. 134 S. Ct. at 2488–89 ("Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse.").

### 2. Mobile phone privacy as discussed in *Riley*

The era of personal mobile phones has given rise to questions about the scope of Fourth Amendment protection afforded phone owners when interacting with law enforcement. In 2014, the Supreme Court addressed a warrantless search of a mobile phone incident to a lawful arrest. *Riley*, 134 S. Ct. at 2488–91. The Court described mobile phones as "minicomputers that . . . could just as easily be called cameras, video players, rolodexes, calendars, tape records, libraries, diaries,

13

albums, televisions, maps, or newspapers" and noted that mobile phones are capable of storing large amounts of data and revealing personal and intimate matters such as internet search histories, contact lists, inclinations to use certain "apps," and other private information. *Id.* at 2489–90.

The Court distinguished a search of the contents of an arrestee's mobile phone from the search of the contents of an arrestee's pocket based on the abundance of personal information citizens keep on their mobile phones and their strong privacy interest in that stored material. *Id.* at 2488–91 (distinguishing *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467 (1973)); *see State v. Granville*, 423 S.W.3d 399, 415–17 (Tex. Crim. App. 2014) (distinguishing mobile phones from other personal items and stating that "searching a person's cell phone is like searching his home desk, computer, bank vault, and medicine cabinet all at once").

Acknowledging that mobile phones "differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person," the Court held that the incident-to-arrest exception to the Fourth Amendment's warrant requirement does not authorize the warrantless search of the contents of a person's mobile phone seized during the person's lawful arrest. *Riley*, 134 S. Ct. at 2489. For the State to lawfully search a person's mobile phone seized during the person's lawful arrest without first obtaining a warrant, the State would have to successfully

14

argue the application of another Fourth Amendment exception, such as the exigency of the circumstances. *See id.* at 2488–91. Otherwise, a warrant is required. *Id.*

While the holding in *Riley* does not directly apply here because Howard's phone was not searched incident to his arrest, Howard argues that the holding limits the scope of *Samson* and other cases discussing the diminished privacy interests of parolees. The question, then, is whether Leidel's written policies, which notified Howard that any unauthorized mobile phone is subject to confiscation and that his "belongings" are subject to search while within the half-way house's premises, sufficiently diminished any expectation of privacy to permit a warrantless search of the contents of the parolee's contraband mobile phone, even after *Riley*.

## C.    Search did not violate Fourth Amendment

Parolees have limited expectations of privacy, *Samson*, 547 U.S. at 850, which are even more diminished while inside a half-way house that has express rules limiting parolee residents' activities and possessions and subjecting them to warrantless searches of their belongings.

While at Leidel and subject to those restrictions, Howard was knowingly in possession of a contraband phone. Not only did Howard possess a phone for which he had not sought approval, his type of phone was banned due to its internet-

15

accessible features. The offending features were the same features that made the phone usable as a source of sexually explicit material, which Howard, as a sex-offender parolee, was prohibited from possessing. Leidel staff reasonably could have believed that a contraband phone, in this context, would, itself, contain contraband material, such as prohibited pornographic images.

We recognize that *Riley* distinguished the contents of a person's mobile phone from the contents of non-digital personal possessions. But *Riley* was decided in the limited context of the search-incident-to-arrest exception and does not have rote application in all other Fourth Amendment contexts. *See United States v. Dahl*, 64 F. Supp. 3d 659, 664–65 (E.D. Pa. 2014) (rejecting argument that *Riley* supersedes *Knights* if reasonable suspicion exists to search probationer's mobile phone). Not every context presents the same level of privacy expectations.

In our view, the context in which this search occurred greatly diminishes the privacy interest Howard held in the content of his mobile phone. *See Riley*, 134 S. Ct. at 2482, 2488–91 (noting that "ultimate touchstone" of Fourth Amendment is reasonableness). Howard is not an arrestee in lawful possession of a personal mobile phone. *Cf. Granville*, 423 S.W.3d at 417 (concluding that detained high school student charged with misdemeanor offense continued to have legitimate expectation of privacy in contents of his mobile phone temporarily being stored for safekeeping in jail property room, such that search of phone hours later by school

16

resource officer who suspected that phone contained inappropriate images unrelated to basis for arrest violated student's Fourth Amendment rights). Nor is he a probationer in lawful possession of a mobile phone. *Cf. United States v. Lara*, 815 F3d 605, 610 (9th Cir. 2016).

Howard, instead, is a sex-offense parolee living in a half-way house who, under the express terms of his release, was not allowed to possess pornography, was not allowed to possess an unauthorized phone, and could not have obtained authorization for any phone with features that would allow access to pornography. Howard knew that he was in possession of a *contraband* mobile phone in violation of multiple residency rules and that Leidel's rules made his belongings subject to search.

While in possession of a contraband electronic storage device, like an advanced mobile phone or computer, a probationer or parolee has a reduced expectation of privacy. *See Wisconsin v. Purtell*, 851 N.W.2d 417, 427 (Wis. 2014) (stating that probationer's privacy interest in contents of computer is undercut when computer is, itself, contraband); *cf. United States v. Boyce*, No. 2014-00029, 2015 WL 856943, at *5–6 (D. V.I. Feb. 26, 2015) (mem. op.) (noting that prisoners have even weaker privacy interests than probationers and parolees and concluding that prisoners have no reasonable expectation of privacy in contraband mobile phone); *United States v. Savala*, No. 13cr4514–BEN, 2015 WL 468352, at

*1 (S.D. Cal. Feb. 3, 2015) (order) (same). Howard's residency conditions "significantly diminished" his "reasonable expectations of privacy" in his contraband phone. *Knights*, 534 U.S. at 119–20.

Howard's diminished expectation of privacy must be balanced against the State's legitimate interest in supervising parolees and guarding against their possession of layered contraband—contraband pornography hidden within a contraband mobile phone.

The parties have not directed us to any Texas cases that have balanced similar interests, and we have found none. But we note that at least one federal court has held that a warrantless search of an unauthorized mobile phone belonging to a sex-crime offender residing in a supervised-release facility did not violate the Fourth Amendment because that individual did not have a reasonable expectation of privacy in the content of his contraband phone given the rules against its possession, the resident's notice of a general right to search, and the governmental interests involved. *United States v. Jackson*, 866 F.3d 982 (8th Cir. 2017); *see United States v. Huart*, 735 F.3d 972 (7th Cir. 2013) (holding similarly but in context of half-way house with explicit rule that mobile phones, specifically, are subject to search of their contents by staff at any time).

By knowingly possessing a contraband phone in violation of his residency rules—given the facility's stated and known policy that residents' belongings are

18

subject to search—we conclude that Howard could not have reasonably held an expectation of privacy in the contents of his contraband phone. Moreover, we conclude that, under an objective standard, and in light of the likelihood of layered contraband (i.e., contraband within contraband), society would be unwilling to recognize that a sexual-offense parolee who is living in a half-way house that forbids the possession of internet-accessible phones and pornography has an expectation of privacy in the contents of a contraband phone. Therefore, the trial court did not err in denying Howard's motion to suppress evidence obtained from his contraband mobile phone without a warrant.

Our holding does not erode the privacy interests recognized in *Riley*: the reasonable expectation of privacy of this parolee in this locale is too small, the legitimate governmental interests are too great, and the context in which this search occurred is too narrow.[3] *See Dahl*, 64 F. Supp. 3d at 664 (stating that allowing search of mobile phone contents in possession of individual with limited expectations of privacy "does not open the floodgates to massive invasions of privacy without judicial oversight.").

---

[3] To recap, this case involves a warrantless search of a mobile phone found within the half-way house's premises, without an authorization tag affixed to it, in the possession of a sex-offender parolee who did not obtain any mobile phone pre-clearance, when the phone visually appeared to be the type of phone capable of accessing the internet in direct violation of the half-way house's residency policies, and the parolee was informed that his belongings were subject to search.

## Conclusion

We affirm.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.

Publish. TEX. R. APP. P. 47.2(b).