

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-20-00220-CR

Rickey Donnell **CRAWFORD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. DC7034
Honorable Steven C. Hilbig, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:         Patricia O. Alvarez, Justice
                 Luz Elena Chapa, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: September 29, 2021

AFFIRMED

In this appeal from an enhanced felony conviction of Injury to the Elderly causing serious bodily injury and an affirmative finding of a deadly weapon, Rickey Donnell Crawford, Appellant, argues the trial court erred in denying his motion to suppress incriminating statements and committed reversible error by refusing to allow a Castle Doctrine instruction. For the reasons given below, we affirm the trial court's decision.

## BACKGROUND

On October 17, 2018, law enforcement officers and paramedics were called to a nursing home for a male resident who was found severely beaten on the floor of Crawford's bedroom. The resident died of complications from his injuries. Crawford was the only suspect. When police arrived, Crawford volunteered incriminating statements to one of the responding officers. Later, after a detective read *Miranda* warnings, Crawford described the assault. The trial court denied Crawford's pretrial motion to suppress his statements and denied a request for a reasonableness presumption instruction for the use of Crawford's deadly force against the other resident. Crawford now appeals, arguing for this court to reverse and remand his case for a new trial.

## MOTION TO SUPPRESS (FIFTH AMENDMENT)

### A. Parties' Arguments

Crawford argues that his incriminating statements should have been suppressed because he was in custody for purposes of *Miranda* when he gave them, and because his first statement was "unwarned." He argues that his second statement was a product of the first statement and that it came after his invocation of his right to remain silent, which made it involuntary and subject to suppression. The State argues that Crawford was not in custody for purposes of *Miranda* and that his statements were, therefore, not subject to suppression.

### B. Standard of Review

Generally, a trial court's ruling refusing to suppress evidence is reviewed for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). This standard gives almost total deference to a trial court's determination of historical facts, especially when resolving the mixed questions of law and fact turning on evaluation of credibility and demeanor. *Crain*, 315 S.W.3d at 48 (citing *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007)); *Howard v. State*, 570 S.W.3d 305, 308 (Tex.

App.—Houston [1st Dist.] 2018, no pet.). If the review depends on an interpretation of law rather than a witness's demeanor and credibility, the matter may be reviewed de novo. *Howard*, 570 S.W.3d at 308 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). But typically, a trial court's ruling on a motion to suppress will not be overturned absent an abuse of discretion. *Citizen v. State*, 39 S.W.3d 367, 369 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Oles*, 993 S.W.2d at 106).

**C.  Applicable Law**

"[A]n accused, held in custody, must be given the adequate and effective warnings 'prior to questioning,' not merely before signing a written statement after all the custodial interrogation is complete." *Martinez v. State*, 272 S.W.3d 615, 619 n.10 (Tex. Crim. App. 2008) (citing *Miranda v. Arizona*, 384 U.S. 436, 445 (1966)). "The failure to give timely warnings generally results in the state being required to forfeit the use of any statement obtained during that interrogation during its case-in-chief." *Id*. However, statements that are volunteered by a suspect "are not barred by *Miranda*, even when the accused is in custody." *Pugh v. State*, 624 S.W.3d 565, 568 (Tex. Crim. App. 2021) (citing *Arizona v. Mauro*, 481 U.S. 520, 529 (1987)). Furthermore, when a suspect invokes his right to remain silent and then reinitiates communication with law enforcement officers, he then waives his Fifth Amendment rights, and its protections fall away. *See Cross v. State*, 144 S.W.3d 521, 527 (Tex. Crim. App. 2004); *Andrus v. State*, No. AP-76,936, 2016 WL 11737288, at *9 (Tex. Crim. App. Mar. 23, 2016) (not designated for publication) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)).

**D.  Analysis**

The victim in this case was a nursing home resident with dementia who would occasionally wander into Crawford's room. Crawford disapproved of these intrusions. On this occasion,

Crawford beat the resident severely. Video footage provided by officers' body cameras shows that Crawford was waiting outside of his room for paramedics to remove the beaten resident. Crawford was asked by a nurse to move his wheelchair to the side of the hallway, and a paramedic asked who was "in charge of" Crawford because he was blocking the hall. An officer who had newly arrived at the scene asked Crawford to move his wheelchair, and Crawford beckoned him over to talk to him. Crawford's speech is difficult to understand in the video, and no transcript was provided, but Crawford can be intermittently heard complaining about the beaten resident stealing money from him and taking his glasses and breaking them on another occasion. The officer asked Crawford if he was confined to a wheelchair, and Crawford explained that he has cerebral palsy and can sometimes walk with the assistance of a walker. Crawford continued to talk unprompted, complaining that the beaten resident had previously taken his glasses and broken them. He explained that if the resident came into his room again, Crawford was going to beat him up. The officer discouraged Crawford from talking and asked Crawford if he knew the name of the man who wandered into his room. Crawford said that he did not. Crawford then continued talking, but the hallway in the video is noisy, and it is difficult to hear him.

In a later video, the investigating detective, Detective Kammlah, approached Crawford in a noisy dining area where Crawford had a food tray at a table, and an officer stood watch. Detective Kammlah introduced himself and asked whether Crawford and he could talk in a nearby room, and Crawford agreed. Detective Kammlah offered to have someone watch Crawford's food, but Crawford insisted on bringing the tray with him. Detective Kammlah led Crawford to an office where he cleared the desk to make room for Crawford's tray. Crawford followed in his wheelchair, talking unprompted about how he was "right." Detective Kammlah read Crawford the *Miranda* warnings, and Crawford invoked his right to remain silent. Detective Kammlah began to move Crawford and his food tray back to the dining area, and Crawford said, "I'll talk to ya; I'll talk to

ya." Detective Kammlah asked, "Are you sure?" and Crawford replied, "Yeah." Their conversation and Crawford's statements followed.

Again, there is no transcript, and Crawford's speech is, at times, difficult to understand, but Crawford explains that he had warned the beaten resident on another occasion not to come into his room. When the resident came into his room on this occasion, Crawford described hitting the resident. Crawford used onomatopoeias like "pow" to describe the altercation. Detective Kammlah asked how many times Crawford thought he hit the resident, and Crawford estimated four times at first and then six times. The estimate is difficult to understand, but Crawford describes sets of strikes. He also seems to say the man wanted to leave the room, but it was too late, since he had already entered after being warned against coming into Crawford's room. He laughed as he described the assault to Detective Kammlah.

In the pretrial phase of Crawford's case, Crawford moved to suppress his incriminating statements, which the trial court denied. At trial, the first statement was not entered into evidence but a redacted version of the second statement was.

The redacted statement shows Detective Kammlah read Crawford the *Miranda* warnings, and accepted Crawford's invocation of his right to remain silent. When Crawford reinitiated the conversation, Crawford voluntarily waived any right when he answered "Yeah" to Detective Kammlah's question, "Are you sure?" The statements provided by Crawford after these circumstances were not subject to suppression under the Fifth Amendment, and the trial court did not abuse its discretion by denying Crawford's motion to suppress. *See Cross*, 144 S.W.3d at 527; *Andrus*, 2016 WL 11737288, at *9.

We overrule Crawford's suppression argument and next address his Castle Doctrine issue.

## CASTLE DOCTRINE

### A.     Parties' Arguments

Crawford argues that the trial court erred in denying his request for a jury charge instruction on justification regarding his assault of the nursing home resident who wandered into his room. The State argues that no evidence supported Crawford's requested instruction and that the court did not commit error by denying it.

### B.     Standard of Review

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).  If we find error, then the standard of review "depends on whether the error was preserved." *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (citing *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020)); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).  Error is reversible if it was preserved with a timely objection and if it caused some harm. *Gonzalez*, 610 S.W.3d at 27; *Almanza*, 686 S.W.2d at 171.  If error was not preserved, the error is reversible if the court determines that the error caused the defendant egregious harm. *Gonzalez*, 610 S.W.3d at 27; *Almanza*, 686 S.W.2d at 171.

### C.     Applicable Law

Texas Penal Code section 9.32 provides a reasonableness presumption for deadly force in defense of a person in their home or business, known as the Castle Doctrine.  *See* TEX. PENAL CODE ANN. § 9.32; *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020); *Villarreal v. State*, 453 S.W.3d 429, 431 (Tex. Crim. App. 2015); *Krajcovic v. State*, 393 S.W.3d 282, 284 (Tex. Crim. App. 2013).  A defendant must satisfy the requirements of the statute before he is entitled to a justification defense under section 9.32.  *See* TEX. PENAL CODE ANN. § 9.32; *Preston v. State*,

756 S.W.2d 22, 25 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd); *Williams v. State*, No. 11-12-00261-CR, 2014 WL 4809938, at \*2 (Tex. App.—Eastland Sept. 25, 2014, no pet.). As applied to this case, the statute requires the assailant to know or have reason to know that an intruder has entered their home with force or is attempting to do so before he may commit an assault without legal repercussion. *See* TEX. PENAL CODE ANN. § 9.32(b)(1)(A); *Elizondo v. State*, 487 S.W.3d 185, 205 (Tex. Crim. App. 2016); *Dearborn v. State*, 420 S.W.3d 366, 377 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**D.      Analysis**

At trial, Crawford requested a jury instruction on the Castle Doctrine, arguing that he was justified to attack an intruder in his room. However, Crawford admitted he had no legal basis to support his argument that the intruder need not necessarily enter with force in order for the Castle Doctrine to apply. *Contra* TEX. PENAL CODE ANN. § 9.32. Further, no evidence was presented that Crawford believed his use of deadly force was immediately necessary to protect himself from the victim or that the victim had entered with force. The record before us indicates that the victim in this case wandered into Crawford's room, and that Crawford believed the man wanted to steal from him, though the victim apologized for being in the room. The record does not show any evidentiary support for a jury charge instruction on justification. Therefore, Crawford's request for such instruction was properly denied. We overrule Crawford's argument regarding the trial court's ruling on his request for a Castle Doctrine instruction.

## CONCLUSION

We conclude that the trial court did not abuse its discretion by denying Crawford's motion to suppress.  We also conclude that Crawford was not entitled to a Castle Doctrine instruction. Therefore, we overrule Crawford's issues on appeal and affirm the judgment of the trial court.

Patricia O. Alvarez, Justice

PUBLISH