IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 4, 2019 Session

## STATE OF TENNESSEE v. ANGELA CARRIE PAYTON HAMM and DAVID LEE HAMM

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Obion County
No. CC-16-CR-15   Jeff Parham, Judge**

_____

### No. W2016-01282-SC-R11-CD

_____

The Obion County Drug Task Force conducted a warrantless search of the residence of probationer Angela Hamm and her husband, David Hamm, which yielded illegal drugs and drug-related contraband.  Defendant Angela Hamm had agreed, pursuant to probation conditions imposed in a prior case, to a warrantless search of her person, property, or vehicle at any time.  We granted the State's appeal in this case to consider whether the warrantless search of a probationer's residence who is subject to a search condition requires officers to have reasonable suspicion of illegal activity prior to conducting the search.  We conclude that it does not and therefore reverse the trial court's judgment and the Court of Criminal Appeals' decision affirming the same.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; and Remanded to the Trial Court**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and HOLLY KIRBY, J., joined.  CORNELIA A. CLARK, J., filed a separate dissenting opinion. SHARON G. LEE, J., also filed a separate dissenting opinion.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Andrew C. Coulam, Assistant Attorney General; Tommy A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the Appellant, State of Tennessee.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the Appellee, Angela Carrie Payton Hamm.

James T. Powell, Union City, Tennessee, for the Appellee, David Lee Hamm.

**OPINION**

### I. Facts and Procedural History

In November 2013, an Obion County jury convicted defendant Angela Hamm (formerly Angela Carrie Payton) of manufacturing a controlled substance. The trial court ordered her to serve a six-year sentence. The sentence was suspended, and she was placed on supervised probation. Notably, the probation order included a warrantless search condition, which stated: "I agree to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole Officer or law enforcement officer, at any time."

Thereafter, it appears that Angela Hamm married defendant David Hamm and moved into his Obion County home. The record indicates that Clifton Hamm also resided with the defendants.

Approximately two years later, on November 16, 2015, Officer James Hall with the Obion County Sheriff's Department/Obion County Drug Task Force received information from an informant that "heavy players" were trafficking methamphetamine in Glass, a community in Obion County. The informant, who had drug charges pending against her, volunteered information about certain drug traffickers bringing methamphetamine to Obion County from across the river. She did not indicate how she obtained the information nor would she identify the traffickers by name. However, when specifically asked about David Hamm, the informant smiled and nodded.

On November 17, 2015, drug task force agents went to the defendants' house to conduct a warrantless "probation search" pursuant to Angela Hamm's probation order. The agents assumed they had reasonable suspicion to conduct such a search based on the information gathered from the above-mentioned informant. When officers knocked on the door of the residence, no one answered. Clifton Hamm's teenage son was standing in the front yard and told them that the defendants had just left but that Clifton Hamm and others were in the shop behind the house. The agents walked behind the house to the detached shop where they encountered Clifton Hamm and two other men. The group

- 2 -

appeared to be watching security camera footage, but Clifton Hamm quickly turned off the television.

The agents then entered the house through an unlocked side door and proceeded to perform a warrantless search of the residence, including the defendants' shared bedroom. Therein, the agents found pills, two glass pipes, methamphetamine, and scales.

The defendants were each arrested and later jointly indicted for six counts of possession of controlled substances with intent to sell or deliver and one count of possession of drug paraphernalia. Tenn. Code Ann. § 39-17-434(a) (possession with intent to sell or deliver 0.5 grams or more of a Schedule II controlled substance, methamphetamine); -417(a)(4) (possession with intent to deliver a Schedule IV controlled substance, alprazolam); -417(a)(4) (possession with intent to sell or deliver a Schedule II controlled substance, morphine); -417(a)(4) (possession with intent to sell or deliver a Schedule II controlled substance, amphetamine); -417(a)(4) (possession with intent to sell or deliver a Schedule IV controlled substance, clonazepam); -417(a)(4) (possession with intent to sell or deliver a Schedule II controlled substance, hydrocodone); and -425(a) (possession of drug paraphernalia). Both defendants filed motions to suppress the evidence seized as a result of the warrantless search of their home. At the hearing on the defendants' motions, the State presented the testimony of Officers James Hall and Ben Yates.

Officer Hall testified that he received the information in question from the informant in November 2015. He confirmed that the decision to search the defendants' home was made based on the information provided to him by the informant. He acknowledged that the informant was a "known methamphetamine user." However, Officer Hall believed the informant to be reliable because she was not a paid informant nor was she "throw[ing] bones at somebody else to keep [ ] attention off of [herself]. . . . She was already caught."

Officer Yates added that agents were also armed with previously obtained relevant information from two additional informants at the time of the search. He had received second-hand information from a "reliable informant" that the defendants were "doing it big in Glass." When asked about the informant's reliability, Officer Yates replied, "This informant has been involved in numerous narcotic cases, the seizure of narcotics, [and] made numerous cases for the drug task force." He acknowledged, however, that the informant received his information from "friends that purchase methamphetamine" and that the informant had not personally observed the illegal activity.

- 3 -

In addition, an informant cooperating with drug task force agents had previously attempted to purchase methamphetamine—albeit unsuccessfully—from Clifton Hamm at his residence. However, agents were unaware that Clifton Hamm was residing with the defendants at the time.

Both agents testified that prior to performing the search of the defendants' home, they confirmed with the local probation office that Angela Hamm was on probation and that the probation order subjected her to a warrantless search. Conversely, both acknowledged that David Hamm was not on probation at the time of the search. According to their testimony, the agents were unaware that the defendants shared a bedroom until they entered the home.

In its May 2, 2016 order, the trial court granted the motions to suppress, stating that it could "find nothing by way of articulable facts to support the reasonable suspicion of the officer to justify a search pursuant to the probation order . . . ." The trial court reviewed the factors upon which the State relied to establish reasonable suspicion and addressed each in turn:

> 1)    Officer James Hall received a tip from a person he had pulled over on a traffic stop that generally said there were some "heavy players" in the Obion County Glass Community.
> 2)    This person however never mentioned a name or how she knew this information.
> 3)    Officer Hall suggested the name of Defendant David Hamm, to the person who winked and smiled, but never mentioned the Defendant Angela Hamm.
> 4)    Officer Ben Yates testified he received information from a reliable informant that there were some people in Glass "doing it big."
> 5)    The informant was not identified, nor was there any indication as to why the informant was reliable.
> 6)    The informant's information was second-hand information from another informant who had attempted unsuccessfully to purchase drugs from another resident (Clifton Hamm) at the location.

(emphasis removed).

The State appealed to the Court of Criminal Appeals, which affirmed the trial court's decision to grant the motions to suppress in a plurality opinion authored by Judge Camille McMullen. *State v. Hamm*, No. W2016-01282-CCA-R3-CD, 2017 WL

- 4 -

3447914, at *1 (Tenn. Crim. App. Aug. 11, 2017). It concluded that the State was required to have reasonable suspicion to support the probation search and that the State lacked such suspicion in the case at hand. *Id.* at *9. Judge John Everett Williams filed a separate concurring opinion agreeing that the State lacked reasonable suspicion to conduct the search and further concluding that Angela Hamm's signature on the probation order did not constitute a valid consent to search. *Id.* at *10-16 (Williams, J., concurring). Finally, Judge Alan Glenn filed a separate dissenting opinion concluding that the agents had reasonable suspicion to search Angela Hamm's house and that the search was also lawful as to David Hamm under the doctrine of common authority. *Id.* at *17-18 (Glenn, J., dissenting).

We granted the State's application for permission to appeal in this case to consider "[w]hether law enforcement must have reasonable suspicion of a probationer's criminal wrongdoing to support a search of the probationer's residence under an agreed-to warrantless-search condition of probation."

## II. Standard of Review

On appeal from a ruling on a motion to suppress, we will uphold the trial court's findings of fact unless the evidence preponderates against those findings. *State v. Stanfield*, 554 S.W.3d 1, 8 (Tenn. 2018) (citing *State v. Hawkins*, 519 S.W.3d 1, 32 (Tenn. 2017); *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014); *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013); *State v. Turner*, 297 S.W.3d 155, 160 (Tenn. 2009); *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). "'Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Id.* (quoting *Hawkins*, 519 S.W.3d at 32; *Odom*, 928 S.W.2d at 23). "The party prevailing in the trial court on a motion to suppress 'is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.'" *Id.* (quoting *Turner*, 297 S.W.3d at 160; *Odom*, 928 S.W.2d at 23). We review the trial court's application of the law to the facts de novo with no presumption of correctness. *Id.* (citing *Hawkins*, 519 S.W.3d at 32-33; *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)); *Turner*, 297 S.W.3d at 160.

## III. Analysis

### A. *The Fourth Amendment*

The Fourth Amendment to the United States Constitution guarantees that "'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .'" *State v. Christensen*, 517 S.W.3d 60, 68 (Tenn. 2017) (quoting U.S. Const. amend. IV); *State v. McCormick*, 494 S.W.3d 673, 678 (Tenn. 2016). Similarly, article I, section 7 of the Tennessee Constitution provides that "'the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures[.]'" *Christensen*, 517 S.W.3d at 68 (quoting Tenn. Const. art. I, § 7).

The search and seizure provisions of the federal and state constitutions are "'identical in intent and purpose.'" *Id.* (quoting *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968)). "Under both constitutional guarantees, reasonableness is 'the ultimate touchstone.'" *Stanfield*, 554 S.W.3d at 9 (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *McCormick*, 494 S.W.3d at 679). Determining whether a particular search is "unreasonable" and therefore a violation of the rights guaranteed by the Fourth Amendment "'depends upon all of the circumstances surrounding the search . . . and the nature of the search . . . itself.'" *Turner*, 297 S.W.3d at 160 (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). While a search is presumptively reasonable when conducted on the basis of probable cause and with a warrant, warrantless searches and seizures are presumptively unreasonable regardless of whether law enforcement actually had probable cause to conduct a search. *See McCormick*, 494 S.W.3d at 678-79 (citations omitted). However, there are circumstances where the reasonableness standard of the Fourth Amendment and article I, section 7 requires neither probable cause nor a warrant. *See Samson v. California*, 547 U.S. 843, 846-47 (2006); *Turner*, 297 S.W.3d at 157.

B. *Warrantless and Suspicionless*[1] *Search of Angela Hamm's Residence (Probationer)*

In *State v. Stanfield*, this Court recently considered whether reasonable suspicion must support a warrantless search of a parolee's residence. *Stanfield*, 554 S.W.3d at 4. Relying on *Samson v. California* and *State v. Turner*, we held that the search of defendant

---

[1] At the outset, we note that the analysis employed herein is confined to whether reasonable suspicion is required for a probation search pursuant to search conditions. "Reasonable suspicion is a less demanding standard than probable cause" and "can be established with information that is different in quantity or content than that required to establish probable cause and . . . can arise from information that is less reliable than that required to show probable cause." *State v. Keith*, 978 S.W.2d 861, 866 (Tenn. 1998) (internal citations omitted).

Winsett's residence was constitutionally reasonable based solely upon Winsett's status as a parolee, even though officers neither had a search warrant nor sought to obtain a warrant[2] prior to searching the residence. *Id.* at 11.

Also, initially at issue in *Stanfield* was the relative expectation of privacy attending co-defendant Stanfield, who was on probation at the time of the search. *Id.* at 8. However, it was not necessary for us to reach the issue of whether reasonable suspicion was required to conduct a warrantless search of a probationer's residence because the search of defendant Stanfield's belongings fell within the purview of common authority. *Id.* at 15. We now address whether, under Tennessee law, reasonable suspicion is required for law enforcement officers to conduct a warrantless search of a probationer's residence.

### 1. *State v. Stanfield*

In reaching our decision in *Stanfield*, this Court undertook a thorough review of *Samson v. California* and *State v. Turner*,[3] both of which addressed parole searches conducted without reasonable suspicion pursuant to a search condition. We noted that in *Turner*, this Court adopted the rationale and holding of *Samson*, stating:

> "The [United States] Supreme Court has recognized that a criminal conviction subjects the offender to 'a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.' *Griffin v. Wisconsin*, 483 U.S. 868, 874 [ ] (1987). An offender's place on this continuum alters what is "reasonable" for purposes of the Fourth Amendment. For instance, incarcerated felons have *no* legitimate expectation of privacy in their prison cells. . . ."

*Stanfield*, 554 S.W.3d at 10 (quoting *Turner*, 297 S.W.3d at 161). This Court in *Turner* expressly held that under both federal and Tennessee state constitutional protections, "[a] parole condition requiring that the parolee submit to warrantless searches is reasonable in light of the parolee's significantly diminished privacy interests; the goals sought to be

---

[2] Because we decided the *Stanfield* case based on defendant Winsett's status as a parolee, we did not reach the question of whether officers had or needed reasonable suspicion to conduct the search of his residence.

[3] For a more comprehensive review of these cases, see *State v. Stanfield*, 554 S.W.3d at 9-13.

attained by early release; and society's legitimate interest in protecting itself against recidivism." *Id.* at 11 (quoting *Turner*, 297 S.W.3d at 166 (footnote omitted)). Moreover, the "State has an 'overwhelming interest' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.'" *Id.* (quoting *Turner*, 297 U.S. at 163) (quoting *Samson*, 547 U.S. at 853). In *Stanfield*, this Court made clear that the search of a parolee's residence could be constitutional without consideration of reasonable suspicion. *Id.*

*Stanfield* echoed the holdings of *Samson* and *Turner* in emphasizing that courts must consider "the totality of the circumstances" in assessing the reasonableness of a search. *Id.* at 9 (quoting *Samson*, 547 S.W.3d at 848) (internal quotation marks omitted). That determination requires a balancing, "'on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* (alteration in original) (quoting *Samson*, 547 S.W.3d at 848) (internal quotation marks omitted). Integral to this "balancing" is the fact that "'parolees . . . have severely diminished expectations of privacy by virtue of their status alone.'" *Id.* at 10 (quoting *Samson*, 547 U.S. at 852.)

In *Samson*, the United States Supreme Court also found it "salient," as did we, that the search condition at issue in that case was "clearly expressed" to the defendant. *Id.* (internal quotation marks and citations omitted) (citing *Samson*, 547 U.S. at 852). The United States Supreme Court pointed out that Samson "signed an order submitting to the condition and thus was unambiguously aware of it." *Id.* (quoting *Samson*, 547 U.S. at 852) (internal quotation marks omitted).

In balancing the diminished expectation of privacy enjoyed by a parolee "with the State's 'overwhelming interest' in supervising parolees, '[who] are more likely to commit future criminal offenses,' and the State's interests in reducing recidivism and in promoting reintegration and positive citizenship," this Court concluded that the State's substantial interest in supervising parolees "'warrant[s] privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.'" *Id.* (quoting *Samson*, 547 U.S. at 853). "The *Turner* Court described *Samson* as 'a narrow exception to the usual rule: an exception which is hardly misguided given the minimal privacy interests retained by parolees and the government's "overwhelming interest" in ensuring that a parolee complies with the conditions of her parole.'" *Id.* at 10-11 (quoting *Turner*, 297 S.W.3d at 164).

- 8 -

While *Stanfield* is instructive in the matter at hand, it is not dispositive because the defendant in this case was on probation, not parole. "'On the continuum of possible punishments and reductions in freedoms, parolees occupy a place between incarcerated prisoners and probationers.'" *Id.* at 10 (quoting *Turner*, 297 S.W.3d at 161). Thus, we look to the United States Supreme Court, federal circuit courts, and our sister states to survey various approaches to warrantless and suspicionless searches of probationers' residences.

## 2. Warrantless Search of a Probationer's Residence

It is undisputed that the Obion County Drug Task Force did not obtain a warrant prior to searching the defendant's residence but that the officers were aware of her status as a probationer. We must next consider what degree of suspicion, if any, is necessary to support a warrantless search of a probationer.

### a. United States Supreme Court

In *United States v. Knights*, the United States Supreme Court considered the constitutionality of a search that was premised on the probation condition requiring Knights to "[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at any time, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *United States v. Knights*, 534 U.S. 112, 114 (2001) (internal quotation marks omitted). Three days after Knights was placed on probation, evidence obtained during an investigation into the arson of a utilities transformer and telecommunications vault led law enforcement officers to conduct a search of Knights' apartment. *Id.* at 115. The detective leading the investigation was aware of Knights' status as a probationer and, accordingly, thought obtaining a search warrant was unnecessary. *Id.* The 3:10 a.m. search revealed evidence connecting Knights with the crimes and subsequently resulted in his being indicted for conspiracy to commit arson, possession of an unregistered destructive device, and being a felon in possession of ammunition. *Id.* at 115-16.

Knights filed a motion to suppress the evidence in the district court. *Id.* at 116. In granting the motion, the district court concluded that although the detective had reasonable suspicion to believe that Knights was involved with incendiary materials, the search was impermissible because its purpose was "investigatory" rather than "probationary." *Id.* The Court of Appeals for the Ninth Circuit affirmed. *Id.* (citation

omitted).  The United States Supreme Court granted *certiorari* "to assess the constitutionality of searches made pursuant to this common California probation condition." *Id.*

The district court found, and Knights conceded on appeal, that the search in question was supported by reasonable suspicion. *Id.* at 122.  In reversing the district court and the Ninth Circuit, the United States Supreme Court addressed the following:

> The State has a dual concern with a probationer.  On the one hand is the hope that he will successfully complete probation and be integrated back into the community.  On the other is the concern, quite justified, that he will be more likely to engage in criminal conduct than an ordinary member of the community.

*Id*. at 120-21.  As such, stated the Court, "the balance of these considerations requires *no more than* reasonable suspicion[4] to conduct a search of [the] probationer's house."  *Id*. at 121 (emphasis added).

Because the search at issue in *Knights* was supported by reasonable suspicion, the search passed Fourth Amendment muster.  *Id*. at 122.  Accordingly, the Court held "that the warrantless search of Knights, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." *Id.*  Of note, however, was the question left unanswered:

---

[4] This is consistent with prior United States Supreme Court precedent, which has held that

> [w]hen the balance of interests precludes insistence on a showing of probable cause, we have usually required "some quantum of individualized suspicion" before concluding that a search is reasonable. We made it clear, however, that a showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable. In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989).

We do not decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy (or constituted consent . . . ) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment. The terms of the probation condition permit such a search, but we need not address the constitutionality of a suspicionless search because the search in this case was supported by reasonable suspicion.

*Id.* at 120 n.6.[5] Thus, the precise question of whether reasonable suspicion must attend the search of a probationer's residence is yet unresolved by our highest Court.

### b. Other Jurisdictions

Although the Sixth Circuit Court of Appeals' decisions interpreting Tennessee law are not binding on this Court, *see Payne v. State*, 493 S.W.3d 478, 492 (Tenn. 2016), we nonetheless find that court's decision in *United States v. Tessier*, 814 F.3d 432 (6th Cir. 2016), to be instructive. In that case, the Sixth Circuit upheld a search based on the same Tennessee probation condition at issue in this case. *Tessier*, 814 F.3d at 433. Tessier was on probation for a 2011 Tennessee felony conviction for sexual exploitation of a minor. *Id.* His probation order contained the provision, "I agree to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time."[6] *Id.*

---

[5] The Supreme Court declined to address whether Knights' acceptance of the search condition constituted consent because it concluded "that the search of Knights was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances,' . . . , with the probation search condition being a salient circumstance." *Knights*, 534 U.S. at 118 (citing *Ohio v. Robinette*, 519 U.S. 33, 39 [ ] (1996). Our holding today is consistent with *Knights* and *Robinette* in that we need not address whether the defendant's acceptance of the search condition in her probation agreement constituted consent because the totality of the circumstances establish that the search was constitutionally reasonable. The *Knights* Court also rejected the "dubious logic [] that an opinion upholding the constitutionality of a particular search implicitly holds unconstitutional any search that is not like it" because such reasoning "runs contrary to *Griffin*'s express statement that its 'special needs' holding made it 'unnecessary to consider whether' warrantless searches of probationers were otherwise reasonable within the meaning of the Fourth Amendment." *Id.* at 117-18 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 878, 880 (2001)).

[6] The *Tessier* court characterized this search provision as being a "standard" search condition that applies to all probationers in Tennessee. *Id.* at 433.

- 11 -

Law enforcement officers searched Tessier's residence as a part of "Operation Sonic Boom," a joint operation between the United States Marshal's Office and Metro Nashville/Davidson County law enforcement and probation officers. *United States v. Tessier,* No. 3:13–00077, 2014 WL 4851688, at *1 (M.D. Tenn. Sept. 29, 2014). Officers searched residences of all known sex offenders in the jurisdiction during the three-day operation. *Id.* During the search of Tessier's residence, which all parties agreed was not supported by reasonable suspicion, officers seized evidence of child pornography. *Tessier,* 814 F.3d at 433. He pleaded guilty to a federal child pornography charge but reserved the right to challenge the denial of his motion to suppress based on the warrantless, suspicionless search. *Id.*

The district court's order denying Tessier's motion to suppress reframed the pivotal issue as follows: "Consistent with the Fourth Amendment, can a probationer who has been convicted of a felony and who has executed a probation order in which he 'agree[s] to a search, without a warrant' be subjected to a search in the absence of reasonable suspicion?" *Tessier,* 2014 WL 4851688, at *3 (alteration in original). Noting that "[t]his question is yet unanswered by the United States Supreme Court or the Court of Appeals for the Sixth Circuit[,]" the court relied on "cases from those courts as well as other circuit courts and the Tennessee Supreme Court [to] provide guidance . . . to answer the question in the affirmative."[7] *Id.*

The district court began with two "non-controversial" premises:

> First, constitutional rights can be waived, and "[i]t is well-settled that a person may waive his Fourth Amendment rights by consenting to a search." *United States v. Carter,* 378 F.3d 584, 587 (6th Cir. 2004) (citing *Davis v. United States,* 328 U.S. 582, 593-94 [ ] (1946)). Second, even though entering into a probation order allows the possibility of home searches, the alternative is likely imprisonment and constant surveillance, a far greater encroachment on Fourth Amendment rights.

*Tessier,* 2014 WL 4851688, at *6 (alteration in original). The court then "'examin[ed] . . . the totality of the circumstances' and . . . 'assess[ed], on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other hand, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at *7 (quoting *Wyoming v. Hougton,* 526 U.S. 295, 300 (1999)).

---

[7] The *Tessier* court "adopted" the district court's reasoning contained in the order denying the motion to suppress. *Id.* (citing *Tessier,* 2014 WL 4851688, at *1).

The district court reasoned that a defendant's status as a probationer subject to a search condition was integral to both sides of that balance because "'[i]nherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.'" *Id.* (alteration in original) (quoting *Knights*, 534 U.S. at 119 (internal quotation marks omitted)). Moreover, "'it is reasonable to conclude that the search condition would further the two primary goals of probation—rehabilitation and protecting society from future criminal violations.'" *Id.* (quoting *Knights*, 534 U.S. at 119).

The court found that the search of Tessier's residence did not violate the Fourth Amendment and, accordingly, denied his motion to suppress. *Id.* In doing so, the district court dispelled the defendant's argument that "his probation order d[id] not contain language about a search 'with or without reasonable cause' and . . . that the absence of such language mean[t] that a search could only be conducted based upon reasonable suspicion." *Id.* The court summarized the defendant's argument: "After all, a search warrant requires 'probable cause,' and so, the argument goes, in the absence of a search warrant there must be reasonable suspicion." *Id.* Rejecting the defendant's argument, the court relied on Tennessee law, reasoning that

> as the Tennessee Supreme Court in *Turner* held, a logical reading of that language is that no warrant will be required, not that, in its stead, reasonable suspicion is required. While *Turner* involved a parolee[,] . . . the *point* the language is intended to make cannot be any different for probationers—the language informs them, as well, that judicial preview is not necessary before a search may occur.

*Id.* at *7 (emphasis added); *see Turner*, 297 S.W.3d at 167 n.12); *see also United States v. King,* 736 F.3d 805, 809 (9th Cir. 2013) (explaining that while a probationer had a greater expectation of privacy than that of a parolee, *id.* (citing *Samson*, 547 U.S. at 852), the probationer nonetheless began with a "lower expectation of privacy than the average citizen" that was "significantly diminished" by the probation search condition, *id.* at 809 (citing *Knights*, 534 U.S. at 120), and concluding that the probationer-defendant's expectation of privacy was lessened and that the search conducted in that case intruded on his legitimate expectation of privacy "only slightly").

States have differing standards with regard to the distinction between parolees' and probationers' expectations of privacy, and thus, the level of suspicion required to support a warrantless search in each case. *See* 5 Wayne R. LaFave, *Search and Seizure:*

- 13 -

*A Treatise on the Fourth Amendment* § 10.10, n.12 (5th ed. 2019), (Oct. update) *available at* Westlaw SEARCHSZR10.10 ("compar[ing] *State v. Cornell*, [146 A.3d 895 (Vt. 2016)] (notwithstanding *Samson*, reasonable suspicion still required for *searches* directed at probationers), and *Murry v. Commonwealth*, [762 S.E.2d 573 (Va. 2014)] (rejecting a probation condition extending to suspicionless searches by police for 'purely investigative' reasons, noting *Samson* [ ] made distinction between parolees and probationers); with *State v. Vanderkolk*, 32 N.E.3d 775 (Ind. 2015) (while 'the facts in *Samson* involved a parolee, not a probationer, and the *Samson* Court made a point of distinguishing the two,' 'despite the differences on the continuum of personal liberty, we nevertheless find that parolees and probationers both share equivalent understandings that their freedom from incarceration is conditional and subject to monitoring,' and thus *both* 'who have consented or been clearly informed that the conditions of their probation or community corrections program unambiguously authorize warrantless and suspicionless searches, may thereafter be subject to such searches'")); *see also* Jay M. Zitter, Annotation, *Validity of Requirement That, as Condition of Probation, Defendant Submit to Warrantless Searches*, 99 A.L.R.5th 557, § 9(a), (b) (2002) (citing cases distinguishing probationers from parolees and requiring reasonable suspicion for probation searches and cases aligning probationers' and parolees' expectations of privacy, thereby not requiring reasonable suspicion).

### c. Tennessee

Upon consideration of the United States Supreme Court's opinions, the Sixth Circuit Court of Appeals' decision in *Tessier,* the varying opinions from other federal circuits and states, and our decisions in *Stanfield* and *Turner,* we acknowledge that the State's substantial interests in supervising probationers as well as parolees "'warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.'" *Stanfield*, 554 S.W.3d at 10 (quoting *Samson,* 547 U.S. at 853). "[T]he state has an interest in a probationer's successful completion of probation and in his or her reintegration into society." *King*, 736 F.3d at 809 (citing *Knights*, 534 U.S. at 120-21). In balancing the diminished expectation of privacy attending a probationer with the State's interests in reducing recidivism and promoting reintegration and positive citizenship, we conclude that it is logical to extend the same reduced expectation of privacy to probationers that we do to parolees.[8] Accordingly, a probation condition of which a defendant unquestionably is aware, coupled with the slight intrusion upon her privacy, weigh in favor of the State's interests. Therefore, we hold that probation search

---

[8] The case before this Court concerns a felon placed on supervised probation. The expectation of privacy of misdemeanants placed on probation is not addressed herein.

conditions that permit a search, without warrant, of a probationer's person, vehicle, property, or place of residence by any Probation/Parole Officer or law enforcement officer, at any time, do not require law enforcement to have reasonable suspicion.[9]

Our decision is supported by public policy concerns. "'[T]he very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.'" *Knights*, 534 U.S. at 120 (quoting *Griffin*, 483 U.S. at 880). The Supreme Court has recognized that

> probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply[.]

*Id.*

### 3. Application

Just as in *Stanfield*, as a condition of defendant Angela Hamm's probation, she signed a probation order that contained the condition, among other things, that "***I agree to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time***." Her signature on the document clearly illustrates that the defendant was "unambiguously" aware of the search condition contained in the probation document, and the officer conducting the search was aware of her status as a probationer. *See Stanfield*, 554 S.W.3d at 10 (citing *Samson*, 547 U.S. at 852). Thus, the search of defendant Hamm's residence was constitutionally reasonable.

Justice Lee asserts that suspicionless searches "hinder[ ] one of the primary goals of probation—rehabilitating and reintegrating probationers into society"—and that probationers who feel they have been mistreated by law enforcement lack a firm foundation upon which to rebuild their lives. Justice Clark posits that "[r]equiring

---

[9] Whether reasonable suspicion was established by the facts of this case is pretermitted by our decision that reasonable suspicion is not required for the search of a probationer's residence.

- 15 -

reasonable suspicion for probationer searches also would lessen, and perhaps even eliminate, the risk of repeated, disruptive, and potentially harassing searches of probationers at their homes, schools, places of employment, or other public places." Contrary to the concerns espoused in the dissents in this case, we again emphasize that this decision does not afford law enforcement unfettered and unreviewable discretion. *See id.* at 12.

A constitutional guardrail is still in place to prevent the intrusions described by the dissenting justices. Like a parolee, a warrantless and suspicionless search of a probationer could be deemed unreasonable and therefore unconstitutional under circumstances indicating that the search was conducted for reasons other than valid law enforcement concerns. Such a search would also be unconstitutional if conducted without knowledge that the person searched was a probationer who was subject to warrantless and suspicionless searches. *See id.* (citing *Turner*, 297 S.W.3d at 166-67). Accordingly, we reiterate that as a procedural safeguard, "'the totality of the circumstances surrounding a warrantless, suspicionless search . . . must be examined to determine whether the search is constitutionally unreasonable.'" *Id.* (quoting *Turner*, 297 S.W.3d at 167). We note, however, just as we determined with respect to a parolee, that a suspicionless search of a probationer "subject to a warrantless search condition, and which is conducted out of valid law enforcement concerns, is not unreasonable." *See id.* (quoting *Turner*, 297 S.W.3d at 167).

In her dissent, Justice Lee emphasizes our state and national trend toward reforming criminal justice systems to encourage rehabilitation over incarceration. The majority does not subscribe to the proposition that rehabilitation and probation search conditions are mutually exclusive. Indeed, the United States Supreme Court noted, "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Knights*, 534 U.S. at 119. Similarly, Justice Clark addresses at length the trial court's discretion in suspending a defendant's sentence and ordering the defendant to submit to supervised probation. Nothing in the majority opinion limits that discretion. To the contrary, *Knights* explained that "[t]he judge who sentenced Knights to probation determined that it was necessary to condition the probation on Knights' acceptance of the search provision. It was reasonable to conclude that the search condition would further the two primary goals of probation-rehabilitation and protecting society from future criminal violations." *Id.* The trial court in this case also determined that the search condition was necessary. This is supported by Deputy Hall's testimony that "[s]ome documents of State probation or parole are somewhat similar, somewhat different."

- 16 -

## 4. Reasonableness

"A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Griffin*, 483 U.S. at 873. Pursuant to *Turner*, we must now engage in a review of the totality of the circumstances, "'of which [the] [d]efendant's status as a [probationer] and her agreement to the warrantless search condition are salient circumstances, and determine whether the search of [the] [d]efendant's residence was reasonable.'" *Stanfield*, 554 S.W.3d at 12 (alteration in original) (quoting *Turner*, 297 S.W.3d at 168 (footnote omitted)).

Here, the record demonstrates that the search was constitutionally reasonable. Officers Hall and Yates were aware of Angela Hamm's probation status and conducted a search based upon what they deemed to be credible information to determine whether she was engaging in drug activity—a valid law enforcement concern. The officers arrived at the home during the daylight hours, not during the night. There is no evidence in the record that suggests that the officers were acting in an arbitrary manner. The record is devoid of any proof that they sought to cause the defendant any harm, that they acted out of personal animosity, or that the search was one of a pattern of repetitive searches while the defendant was at work or asleep.

The majority opinion in this case strikes a balance between a probationer's reduced expectation of privacy and promotion of the State's legitimate interests. Concerns enumerated by the dissents, such as probationers being subjected to repetitive, disruptive, or harassing searches at their homes, schools, places of employment, or public places are assuaged by the touchstone of reasonableness.

Accordingly, considering the totality of the circumstances, the search of the defendant's bedroom was clearly permissible. We conclude that because Officers Hall and Yates knew about the defendant's status as a probationer and because the defendant was aware that she was subject to warrantless searches at any time as a condition of her probation, officers did not err in searching certain areas of the defendant's residence. Absent any evidence whatsoever that the search in question was unreasonable in a constitutional sense and keeping in mind the State's significant interests in combating recidivism and thwarting illegal drug activity by probationers, we hold that evidence seized during the warrantless search of the defendant's residence was admissible against her and that the trial court erred in suppressing the evidence. We reverse the trial court's decision granting the defendant Angela Hamm's motion to suppress and the Court of Criminal Appeals' opinion affirming the decision.

C. *Warrantless Search of Defendant David Hamm's Possessions in Shared Bedroom*

We next address the trial court's decision to grant defendant David Hamm's motion to suppress. As stated *supra*, defendants David and Angela Hamm shared a bedroom within the residence, thus, their legal statuses intertwine. Therefore, it is necessary to consider whether the doctrine of common authority applies to the search of belongings that were found within the bedroom but that clearly belonged to David Hamm.

In *Stanfield*, we expressly adopted the doctrine of common authority as it applies to parole searches of areas of a residence over which a parolee has common authority. 554 S.W.3d at 13-15 (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974); *People v. Pleasant*, 19 Cal. Rptr. 3d 796, 798 (Cal. Ct. App. 2004); *People v. Smith*, 116 Cal. Rptr. 2d 694, 697 (Cal. Ct. App. 2002); *State v. Bartram*, 925 S.W.2d 227, 230-31 (Tenn. 1996)); *see also United States v. Cantley*, 130 F.3d 1371, 1377 (10th Cir. 1997) (concluding that parole search was lawful as to parolee's wife because officers only searched common areas and the one bedroom that was identified as belonging to Cantley); *United States v. Davis*, 932 F.2d 752, 758-59 (9th Cir. 1991) (rejecting co-defendant's argument that officers exceeded scope of warrantless search of probationer's residence when they searched a safe that was under the apparent joint control of probationer and co-defendant); *State v. Yule*, 905 So. 2d 251, 264 (Fla. Dist. Ct. App. 2005) ("The non-probationer's diminished expectation of privacy extends to those portions of the shared residence over which the probationer and non-probationer have joint dominion. 'Persons who live with probationers cannot reasonably expect privacy in areas of a residence that they share with probationers.'" *Pleasant*, 19 Cal.Rptr.3d at 798.); *State v. West*, 517 N.W.2d 482, 491 (1994) (stating that a "parole search may extend to all parts of the premises to which the probationer or parolee has common authority, just as if it were a consent search"). In doing so, this Court relied on language from a Minnesota decision that held, "Non-probationers who choose to live with probationers 'assume the risk that they too will have diminished Fourth Amendment rights in areas shared with the probationer.'" *State v. Bursch*, 905 N.W.2d 884, 890 (Minn. Ct. App. 2017) (quoting *State v. Adams*, 788 N.W.2d 619, 623 (N.D. 2010)). We conclude that the privacy intrusion upon an individual sharing a bedroom (i.e., an area with common authority) with a probationer is not so invasive that it would not be tolerated under the Fourth Amendment.[10] *See Stanfield*, 554 S.W.3d at 15.

---

[10] We find extension of the doctrine of common authority to warrantless probation searches to be reasonable, especially in consideration of the fact that this Court has applied the doctrine in a case

Nevertheless, the government bears the burden of proving the common authority doctrine applies. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). The State has satisfied its burden in this case. The officers believed the defendants to be either married or "seeing each other," and Angela Hamm had been living in David Hamm's home "for quite some time." Angela Hamm and David Hamm shared a bedroom in the residence. Thus, by virtue of the doctrine of common authority, law enforcement officers did not err in searching and seizing all items of contraband found in the shared bedroom.[11] The trial court, therefore, erred in suppressing the evidence against David Hamm. We reverse the trial court's granting of defendant David Hamm's motion to suppress and the Court of Criminal Appeals' decision affirming that decision.

## CONCLUSION

We hold that because of the probation conditions to which defendant Angela Hamm was subject, the probation search of portions of defendant Angela Hamm's residence was constitutionally permissible. Because the defendants shared a bedroom, the search of David Hamm's personal belongings located within that bedroom was proper pursuant to the doctrine of common authority. The trial court erred in suppressing the evidence against both defendants. Therefore, we reverse the Court of Criminal Appeals'

---

involving spousal consent, where neither party was subject to diminished privacy interests. *State v. Pritchett*, 621 S.W.2d 127, 134 (Tenn. 1981) ("A wife can consent to the search of her home, and if objects are found [that] would incriminate her husband, such objects are admissible in evidence."); *see also State v. Talley*, 307 S.W.3d 723, 734 (Tenn. 2010) (holding that a live-in girlfriend can consent to search based on the doctrine of common authority).

[11] In her dissent, Justice Clark espouses concerns that a probationer might encounter difficulty finding suitable housing because "[a]nyone sharing a residence with a probationer loses a portion of his or her own constitutional protections because areas of the residence over which the probationer exercises common authority also will be subject to warrantless, suspicionless searches under the common authority doctrine." The dissent continues by noting that in this case, officers did not limit their search to areas of the residence over which the defendant exercised common authority. Roommates or house-mates of probationers need not be concerned with searches of their private quarters. That issue was foreclosed by *Stanfield*. 554 S.W.3d at 18 ("To give clear guidance to law enforcement officers, we emphasize that law enforcement is only permitted to conduct a search of a certain area of a parolee's residence if 'the facts available to the officers . . . support a reasonable belief that the [parolee] has at least common authority over the area searched.' *Davis*, 965 P.2d at 533. By so holding, this Court is balancing the State's interests in enforcing the terms of parole by not allowing parolees to create a 'loophole' by residing with a non-parolee while simultaneously respecting the Fourth Amendment rights of an unencumbered citizen by not allowing law enforcement officers unfettered access to all areas inside the parolee's residence.") (alteration in original).

decision to the contrary and remand this cause to the trial court for proceedings consistent with this opinion.

It appearing that the defendants Angela Hamm and David Hamm are indigent, costs of this appeal are taxed to the State of Tennessee.

_____
ROGER A. PAGE, JUSTICE